1  Peter Karanjia (admitted *pro hac vice*)
   Joy Kim (CA State Bar No. 294841)
2  DLA PIPER LLP (US)
   500 8th Street, NW
3  Washington, D.C. 20004
   Telephone:     (202) 799-4135
4  Email:         peter.karanjia@dlapiper.com
                  joy.kim@us.dlapiper.com
5
   Martin L. Fineman (CA State Bar No. 104413)
6  Geoffrey S. Brounell (admitted *pro hac vice*)
   DAVIS WRIGHT TREMAINE LLP
7  505 Montgomery Street, Suite 800
   San Francisco, California  94111-6533
8  Telephone:     (415) 276-6500
   Email:         martinfineman@dwt.com
9                 geoffreybrounell@dwt.com

10 Attorneys for Plaintiff

11
   Arocles Aguilar (CA State Bar No. 94753)
12 Helen M. Mickiewicz (CA State Bar No. 123184)
   Enrique Gallardo (CA State Bar No. 191670)
13 California Public Utilities Commission, Legal Division
   505 Van Ness Avenue
14 San Francisco, California  94102-6533
   E-mail:        Enrique.gallardo@cpuc.ca.gov
15 Attorneys for Defendants

16             **IN THE UNITED STATES DISTRICT COURT**
              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
17                    **SAN FRANCISCO DIVISION**

18
    METROPCS CALIFORNIA, LLC,                 Case No. 3:17-cv-05959-SI
19                        Plaintiff,
                                              **JOINT CASE MANAGEMENT**
20        v.                                  **STATEMENT AND [PROPOSED]**
                                              **ORDER**
21
   MICHAEL PICKER, President of the California
22 Public Utilities Commission, in his official capacity;   Date:   September 25, 2020
   MARTHA GUZMAN ACEVES, Commissioner of   Time:   3:00 PM
23 the California Public Utilities Commission, in her   Judge:  Hon. Susan Illston
   official capacity; CARLA J. PETERMAN,
24 Commissioner of the California Public Utilities
   Commission, in her official capacity; LIANE M.
25 RANDOLPH, Commissioner of the California
   Public Utilities Commission, in her official capacity;
26 CLIFFORD RECHTSCHAFFEN, Commissioner of
   the California Public Utilities Commission, in his
27 official capacity,
                        Defendants.
28

1    Plaintiff MetroPCS California, LLC ("MetroPCS") and Defendants Marybel Batjer,

2  Commissioner and President of the California Public Utilities Commission,[1] Liane M. Randolph,

3  Martha Guzman Aceves, Clifford Rechtschaffen, and Genevieve Shiroma, Commissioners of the

4  California Public Utilities Commission (collectively, "Defendants" or the "CPUC"), respectfully

5  submit the following Joint Case Management Statement and [Proposed] Order pursuant to the

6  Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9.

7    The CPUC has not yet formulated its definitive position on all of the topics addressed

8  below.  Accordingly, in certain instances where the parties were unable to agree on a common

9  position at this time, the following indicates MetroPCS's position.

10    As discussed more fully below, this case has returned to this Court on remand from the

11  U.S. Court of Appeals for the Ninth Circuit.  *MetroPCS California, LLC v. Picker*, No. 18-17382,

12  __ F.3d __, 2020 WL 4726364 (9th Cir. Aug. 14, 2020) ("*MetroPCS*").

13    **1.    Jurisdiction and Service:**

14       a.    Subject Matter Jurisdiction:

15    This civil action arises under the Communications Act of 1934, as amended, 47 U.S.C.

16  §§ 151, et seq.; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; and the Commerce and

17  Supremacy Clauses of the United States Constitution.  This Court therefore has jurisdiction over

18  this case under 28 U.S.C. § 1331.  All Defendants are sued solely in their official capacities as

19  Commissioners of the California Public Utilities Commission under *Ex parte Young*, 209 U.S. 123

20  (1908).  *See, e.g.*, *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

21       b.    Personal Jurisdiction:

22    No issues exist regarding personal jurisdiction.

23       c.    Venue:

24    No issues exist regarding venue.

25

26  [1] At the time the Complaint was filed, Michael Picker and Carla J. Peterman were Commissioners
   of the CPUC and were named as Defendants in their official capacities.  Marybel Batjer and
27  Genevieve Shiroma are now Commissioners, and should be substituted as Defendants in place of
   former Commissioners Picker and Peterman.

28
1

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER
*MetroPCS California, LLC v. Picker et al.*, CASE NO. 3:17-CV-05959-SI

1          d.      Service:

2          No issues exist regarding service on Defendants of the Complaint, the First Amended

3     Complaint, or the Second Amended Complaint.

4          **2.      Facts and Procedural History:**

5          In this action, MetroPCS, a provider of prepaid wireless service,[2] is challenging three

6     Resolutions adopted by the California Public Utilities Commission ("CPUC").  The first

7     Resolution, which was adopted in November 2016, was effective from January 1, 2017 to

8     December 31, 2017; the second Resolution, which was adopted in October 2017, reaffirmed the

9     first Resolution; the third Resolution, which was adopted in November 2017, was effective from

10    January 1, 2018 to December 31, 2018.

11          *a.      Claims*

12          Collectively, the Resolutions require wireless carriers (such as MetroPCS) that provide

13    prepaid wireless service in California to assess the state's prepaid mobile telephony services

14    surcharge, as defined by the California Prepaid Mobile Telephony Services Surcharge Collection

15    Act, enacted by Assembly Bill 1717 (Chapter 885, Statutes 2014, Perea) (the "Prepaid Collection

16    Act"), on the sales of prepaid wireless plans to the public.  MetroPCS contends that the

17    Resolutions are preempted by federal law.  MetroPCS's operative complaint alleged that the

18    Resolutions are preempted on five independent grounds:  (1) they rely on an "intrastate factor"

19    that deprives prepaid carriers of the flexibility they enjoy under federal law to allocate their

20    prepaid revenues based on their books and records and analyses of calling traffic known as "traffic

21    studies"; (2) they impose an inequitable and discriminatory surcharge on prepaid wireless service

22    that is not imposed on equivalent postpaid service, in violation of 47 U.S.C. 254(f) and relevant

23    orders of the Federal Communications Commission ("FCC"); (3) they assess the surcharge on

24    MetroPCS's *interstate* services included in its prepaid wireless service plans (including broadband

25    Internet access service and interstate voice service), in violation of the federal Communications

26

27    [2] Consumers of "prepaid" wireless service pay in advance of service.  By contrast, consumers of
      "postpaid" service are billed the month after using service.

28
                                                                2

1    Act and FCC orders; (4) they rely on calculations of the intrastate factor that were based on a

2    fundamentally flawed methodology; and (5) they conflict with the federal Mobile

3    Telecommunications Sourcing Act.  The CPUC denies these claims.

4        MetroPCS contends that the Prepaid Collection Act could (and should) be construed to

5    avoid these conflicts with federal law; however, MetroPCS also asserted a contingent claim that

6    the Act is preempted for the same reasons as the CPUC's Resolutions if the Court declines to so

7    construe the statute.

8        The CPUC disputes that the 2017 and 2018 Resolutions are preempted by federal laws

9    relied upon by MetroPCS, in that these federal laws address the issue of interstate universal

10   service surcharges rather than intrastate surcharges required by the state law at issue in these

11   Resolutions.  The CPUC contends that these Resolutions implemented the Prepaid Collection Act

12   in the only manner prescribed by the state law.  The CPUC contends that the "intrastate allocation

13   factor" utilized in the 2017 and 2018 Resolutions is what allowed the CPUC's calculation to

14   comport with the Prepaid Collection Act's specific point-of-sale requirement.  The CPUC

15   therefore contends that the Prepaid Collection Act, and in turn the 2017 and 2018 Resolutions,

16   cannot be construed as MetroPCS proposes.

17              *b.        This Court's November 2018 Decision on Summary Judgment*

18       On November 5, 2018, on cross-motions for summary judgment following the completion

19   of discovery, this Court granted summary judgment in favor of MetroPCS.  Dkt No. 88 (reported

20   at 348 F. Supp. 3d 948 (N.D. Cal. 2018)).  The Court held that the Resolutions were *facially*

21   preempted because they mandated an "intrastate factor" that "deprives carriers of the ability to

22   treat as intrastate for universal service purposes the same revenues that they treat as intrastate for

23   federal [Universal Service Fund] purposes."  *Id.* at 17-18.  "[A]fford[ing] considerable deference"

24   to the statutory interpretation proffered by the CPUC, this Court held that the Act required the use

25   of an intrastate factor and therefore must fail for the same reasons as the contested Resolutions.

26   *Id.* at 21-22 & n.13.  The Court subsequently enjoined enforcement of the contested Resolutions

27   and the Prepaid Collection Act on that basis.  Dkt. Nos. 94, 95.

28

1          *c.*       *CPUC's Return to its Pre-2017 Approach for 2019*

2       Although the CPUC had initially proposed to extend its intrastate factor approach for

3 calendar year 2019, to comply with this Court's injunction, the CPUC issued an emergency

4 resolution on December 4, 2018, that rescinded the proposed 2019 resolution before it went into

5 effect.  Resolution L-574, 2018 WL 6566929 (CPUC Dec. 4, 2018) ("the Commission hereby

6 rescinds T-17632 consistent with the Federal Court's orders.").

7       On December 13, 2018, the Commission issued a Resolution governing calendar year 2019

8 that reverted to the CPUC's pre-2017 surcharge methodology—i.e., it did not rely on an intrastate

9 factor and instead allowed prepaid carriers to allocate their revenues based on the options afforded

10 to all telecommunications carriers prior to enactment of the Prepaid Collection Act.  Resolution T-

11 17641, 2018 WL 6830153, at *1 (CPUC Dec. 13, 2018) (the "2019 Resolution") ("For the year

12 2019, and unless and until the Commission issues a subsequent order, prepaid wireless carriers

13 shall collect, report, and remit the [CPUC's] surcharges and User Fee . . . in the same manner as

14 required of all other wireless carriers . . . .  This will be consistent with the universal surcharge

15 mechanism applicable to all telecommunications carriers in existence *prior to* the enactment of the

16 Prepaid Mobile Telephony Services Surcharge Collection Act") (emphasis added).

17          *d.*       *Appeal and Expiration of Prepaid Collection Act*

18       The CPUC appealed this Court's grant of summary judgment.  Dkt. No. 96.

19       On January 1, 2020, while the CPUC's appeal to the Ninth Circuit was pending, the

20 Prepaid Collection Act expired by its own terms.  *See MetroPCS*, 2020 WL 4726364, at *7.

21          *e.*       *The Ninth Circuit's Opinion and Remand*

22       In an opinion issued on August 14, 2020, the Ninth Circuit (i) reversed this Court's *facial*

23 invalidation of the CPUC's 2017 and 2018 Resolutions and the Prepaid Collection Act, and (ii)

24 remanded the case to this Court to consider MetroPCS's remaining claims.  *MetroPCS*, 2020 WL

25 4726364, at *2 ("[W]e hold that the CPUC resolutions are not facially preempted by the

26 Telecommunications Act and related FCC decisions, and we therefore reverse the district court's

27 ruling in favor of MetroPCS.  We remand to the district court to consider in the first instance

28

4

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER
*MetroPCS California, LLC v. Picker et al.*, CASE NO. 3:17-CV-05959-SI

1   MetroPCS's other challenges to the resolutions."); *see also id.* at \*16 ("MetroPCS advances

2   several other challenges to the CPUC resolutions. These challenges were not reached by the

3   district court, and we therefore decline to address them in the first instance.").

4       **3.     Legal Issues:**

5       Consistent with the Ninth Circuit's remand, MetroPCS now seeks to pursue its remaining

6   claims.  MetroPCS believes those claims can—and should—be resolved on summary judgment.

7       First, MetroPCS intends to pursue the as-applied discrimination claim discussed in the

8   Ninth Circuit's opinion.  The Ninth Circuit explained that "MetroPCS argues that the CPUC

9   resolutions are preempted as applied to MetroPCS.  Our analysis above makes clear that the

10  resolutions would be preempted if applying them to MetroPCS resulted in double assessments on

11  MetroPCS's revenue, which would unfairly disadvantage MetroPCS relative to its competitors—

12  and thereby conflict with the competitive neutrality requirement."  *Id*. at \*16.  The Ninth Circuit

13  further explained that "[w]e see no meaningful distinction between prepaid and postpaid services

14  that could justify imposing the higher surcharge only on prepaid services" and that "under the

15  CPUC resolutions, a provider of prepaid services that was subject to the same surcharge rate as a

16  provider of postpaid services, but on a higher portion of its surchargeable revenues, would have

17  found itself at an unfair competitive disadvantage."  *Id.* at \*13; *see also id.* at n.10 ("[T]he fact that

18  direct sellers and indirect sellers were treated equally by the CPUC does not change the fact that

19  providers of prepaid services were potentially treated inequitably compared to providers of

20  postpaid services"); *id*. at \*16 n.12 ("on the facts of this case, it seems that any double assessments

21  on MetroPCS's revenue would necessarily conflict with the competitive neutrality principle, so the

22  CPUC resolutions would be preempted on that ground.").

23      Second, MetroPCS intends to pursue its other preemption claims.  *See id.* at \*16

24  (discussing MetroPCS's claim that the intrastate factor was based on a fundamentally flawed

25  methodology and that the Resolutions conflict with the Mobile Telecommunications Sourcing

26  Act); *see also* Dkt. No. 49 (Second Amended Complaint, ¶ 71).

27

28

1    The CPUC contests these claims.  The CPUC does not agree that MetroPCS's as-applied

2   discrimination claim, discussed in the Ninth Circuit's opinion, is amenable to summary judgment.

3   The CPUC maintains that the Ninth Circuit explained that if MetroPCS could demonstrate double

4   assessments on its revenues, that is dispositive of an as-applied analysis.  *See MetroPCS*, 2020

5   WL 4726364, at \*16 n.12.  The CPUC contends (and MetroPCS disputes) that whether there was a

6   double assessment on MetroPCS's revenues depends on material facts in dispute, which cannot be

7   resolved as a matter of law.  *See* Fed. Rule of Civ. Proc. 56(a).

8    The CPUC does not agree that MetroPCS's claim that the intrastate allocation factor was

9   based on a flawed methodology is amenable to summary judgment.  In the CPUC's view (which

10   MetroPCS also disputes), whether the CPUC's intrastate allocation factor was flawed will inform

11   the issue of whether there was double assessment on MetroPCS's revenue, and similarly depends

12   on material facts in dispute, which cannot be resolved as a matter of law.

13    The CPUC agrees that the issue of whether the Resolutions conflict with the Mobile

14   Telecommunications Sourcing Act is amenable to summary judgment.

15   **4.     Motions:**

16    Concurrent with this filing, the parties have stipulated to (1) substitute current CPUC

17   President and Commissioner Marybel Batjer for former CPUC President and Commissioner

18   Michael Picker; (2) substitute current CPUC Commissioner Genevieve Shiroma for former

19   Commissioner Carla J. Peterman; and (3) update the case caption accordingly.

20    There are currently no pending motions.  Under the briefing schedule MetroPCS proposes

21   below, MetroPCS would file its motion for summary judgment covering all remaining claims by

22   November 24, 2020, and Defendants would have the option of filing a combined opposition and

23   cross-motion for summary judgment by January 8, 2021.

24   **5.     Amendment of Pleadings:**

25    MetroPCS filed its original Complaint on October 17, 2017.  Dkt. No. 1.  After the CPUC

26   issued its Resolution imposing an intrastate factor for calendar year 2018, MetroPCS amended its

27   complaint to add a challenge to that Resolution.  Dkt. No. 32.  After the FCC issued a relevant

28

6

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER
*MetroPCS California, LLC v. Picker et al.*, CASE NO. 3:17-CV-05959-SI

order, MetroPCS amended its complaint, filing the operative complaint—the Second Amended Complaint—on January 19, 2018.  Dkt. No. 49.  On January 19, 2018, the parties stipulated that Defendants' previously filed Answer would be deemed responsive to the Second Amended Complaint.  Dkt. No. 48.

**6.    Evidence Preservation:**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7.    Disclosures:**

The parties served their initial disclosures on or before December 20, 2017.

**8.    Discovery:**

The parties held their Rule 26(f) meet-and-confer session on December 6, 2017 and exchanged discovery requests and responses.  Consistent with this Court's order (Dkt. No. 52), discovery closed on March 9, 2018.

**9.    Class Actions:**

This is not a class action.

**10.    Related Cases:**

The parties are unaware of any related cases within the meaning of Local Rule 3-12.

**11.    Relief:**

MetroPCS is seeking declaratory relief; an injunction; an award of MetroPCS's costs and expenses, including reasonable attorneys' fees and costs of suit; and any other and additional relief the Court may deem just and proper.  Defendants deny that MetroPCS is entitled to such relief.

**12.    Settlement and ADR:**

The parties have complied with ADR L.R. 3-5.  On March 1, 2018, the parties participated in mediation before Magistrate Judge Elizabeth D. Laporte.  The mediation did not result in a

7

1   settlement.  Dkt. No. 56.  MetroPCS remains open to exploring settlement.  The CPUC has not yet

2   formulated a position on whether further settlement discussions would be productive.

3          **13.      Consent to Magistrate:**

4          Consent to assignment for all purposes to a Magistrate Judge has been declined.

5          **14.      Other References:**

6          This case is not suitable for reference to binding arbitration, a special master, or the

7   Judicial Panel on Multidistrict Litigation.

8          **15.      Narrowing of Issues:**

9          At this time, the parties are not aware of any issues that might be resolved through

10  stipulation or similar approach.  The parties will consider whether the issues can be further

11  narrowed by stipulation.

12         Given the nature of MetroPCS's remaining claims, MetroPCS believes that, absent

13  settlement, this case can—and should—be resolved on summary judgment (though MetroPCS

14  reserves its right to a jury trial).  Below, MetroPCS has proposed a briefing schedule for its motion

15  for summary judgment (and, if the CPUC so chooses, a cross-motion for summary judgment).

16  The CPUC believes that the only issue that may be resolved on summary judgement is whether the

17  Mobile Telecommunications Sourcing Act preempts the 2017 and 2018 Resolutions, whereas the

18  remaining issues require a trial.  The CPUC concurs with MetroPCS' proposed schedule, should

19  the Court choose to resolve some issue through partial summary judgment.

20         In the event that the CPUC files a cross-motion for summary judgment, to avoid repetition,

21  the parties propose that each sides file combined summary judgment briefs (i.e., after MetroPCS

22  files its moving papers, Defendants would file a combined brief in opposition to MetroPCS's

23  motion for summary judgment and in support of Defendants' cross-motion for summary

24  judgment; MetroPCS would file a combined reply brief in further support of its motion for

25  summary judgment and in opposition to Defendants' cross-motion for summary judgment; and

26  Defendants would have the option of filing a reply brief in support of their cross-motion for

27

28

1   summary judgment).  The parties may request a reasonable adjustment of the page limits for such

2   consolidated briefing.

3       **16.     Expedited Trial Procedure:**

4       The parties do not believe that this case is suitable for the expedited trial procedure.

5       **17.     Scheduling:**

6       The parties propose the following pretrial and trial schedule.

7
8
| Plaintiff's Motion for Summary Judgment Due | November 24, 2020 |
|---|---|
| Defendants' Opposition to Plaintiff's Motion for Summary Judgment (or, if the CPUC so chooses, Defendants' Combined Opposition and Cross-Motion for Summary Judgment) Due | January 8, 2021 |
| Plaintiff's Reply in Further Support of its Motion for Summary Judgment (or, if there are cross-motions, Plaintiff's Combined Reply and Opposition to Defendants' Cross-Motion for Summary Judgment) Due | February 19, 2021 |
| Defendants' Optional Reply (if there are cross-motions) Due | March 19, 2021 |
| Hearing Date | April 16, 2021 |
| Final Pre-Trial Conference (if necessary) | Four months from decision on cross-motions for summary judgment |
| Trial (if necessary) | Five months from decision on cross-motions for summary judgment |

20

21       **18.     Trial:**

22       MetroPCS has demanded a jury trial.  Trial, if necessary, is estimated at 7 days.  However,

23   MetroPCS anticipates that this case will be resolved on summary judgment, whereas the CPUC

24   anticipates that only one issue can be resolved on summary judgment.

25       **19.     Disclosure of Non-Party Interested Entities or Persons:**

26       Corporate ownership changes have occurred while this case was on appeal.  MetroPCS

27   states as follows:

28

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER
*MetroPCS California, LLC v. Picker et al.*, CASE NO. 3:17-CV-05959-SI

MetroPCS California, LLC, a Delaware limited liability company, is a wholly-owned subsidiary of T-Mobile USA, Inc., a Delaware corporation.  T-Mobile USA, Inc. is a wholly-owned subsidiary of T-Mobile US, Inc., a Delaware corporation. T-Mobile US, Inc. (NASDAQ: TMUS) is a publicly traded company listed on the NASDAQ Global Select Market of NASDAQ Stock Market LLC ("NASDAQ"). Deutsche Telekom Holding B.V., a limited liability company (*besloten vennootschap met beperkte aansprakelijkheidraies*) organized and existing under the laws of the Netherlands ("DT B.V."), owns more than 10% of the shares of T-Mobile US, Inc.  DT B.V. is a direct wholly-owned subsidiary of T-Mobile Global Holding GmbH, a Gesellschaft mit beschränkter Haftung organized and existing under the laws of the Federal Republic of Germany ("Holding").  Holding is, in turn, a direct wholly-owned subsidiary of T-Mobile Global Zwischenholding GmbH, a Gesellschaft mit beschränkter Haftung organized and existing under the laws of the Federal Republic of Germany ("Global").  Global is a direct wholly-owned subsidiary of Deutsche Telekom AG, an Aktiengesellschaft organized and existing under the laws of the Federal Republic of Germany ("Deutsche Telekom"). The principal trading market for Deutsche Telekom's ordinary shares is the trading platform "Xetra" of Deutsche Börse AG.  Deutsche Telekom's ordinary shares also trade on the Frankfurt, Berlin, Dusseldorf, Hamburg, Hannover, München, and Stuttgart stock exchanges in Germany.  Deutsche Telekom's American Depositary Shares ("ADSs"), each representing one ordinary share, trade on the OTC market's highest tier, OTCQX International Premier (ticker symbol: "DTEGY").

Additionally, SoftBank Group Corp. owns more than 10% of the shares of T-Mobile US, Inc.  Masayoshi Son owns more than 10% of SoftBank Group Corp.

Defendants are not required to file this certificate.

### 20.    **Professional Conduct:**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

### 21.    **Other:**

The parties respectfully ask this Court to make the Stipulation substituting certain Defendants named in their official capacities an Order of the Court.

1   **IT IS SO STIPULATED.**

2   Dated:  September 18, 2020

3                                                            Respectfully Submitted,

4                                                            DLA PIPER LLP (US)

5                                                            By:_____*/s/ Peter Karanjia*_____

6                                                               Peter Karanjia (admitted *pro hac vice*)
                                                               Joy Kim (CA State Bar No. 294841)
7
                                                               DLA PIPER LLP (US)
8                                                              500 8th Street, NW
                                                               Washington, D.C. 20004
9                                                              Telephone:    (202) 799-4135
                                                               Email:     peter.karanjia@dlapiper.com
10                                                                         joy.kim@us.dlapiper.com

11

12                                                              Martin L. Fineman (CA State Bar No. 104413)
                                                               Geoffrey S. Brounell (admitted *pro hac vice*)
13                                                             DAVIS WRIGHT TREMAINE LLP
                                                               505 Montgomery Street, Suite 800
14                                                             San Francisco, California  94111-6533
                                                               Telephone:    (415) 276-6500
15                                                             Facsimile:    (415) 276-6599
                                                               Email:        martinfineman@dwt.com
16                                                                           geoffreybrounell@dwt.com

17                                                             Attorneys for Plaintiff
                                                               MetroPCS California, LLC
18

19                                                             CALIFORNIA PUBLIC UTILITIES
                                                               COMMISSION, LEGAL DIVISION
20
                                                               By:_____*/s/ Enrique Gallardo*_____
21                                                                Enrique Gallardo (CA State Bar No. 191670)

22                                                             Attorneys for Defendants Marybel Batjer,
                                                               Commissioner and President of the California
23                                                             Public Utilities Commission, Liane M.
                                                               Randolph, Martha Guzman Aceves, Clifford
24                                                             Rechtschaffen, and Genevieve Shiroma,
                                                               Commissioners of the California Public Utilities
25                                                             Commission

26

27

28

**[PROPOSED] CASE MANAGEMENT ORDER**

Marybel Batjer, in her official capacity as Commissioner and President of the California Public Utilities Commission is substituted as a Defendant in place of Michael Picker.  Genevieve Shiroma, in her official capacity as a Commissioner of the California Public Utilities Commission is substituted as Defendant in place of Carla J. Peterman.

The Clerk of the Court is directed to amend the case caption accordingly.

**IT IS SO ORDERED**

Dated:  _____, 2020

_____
The Honorable Susan Illston
United States District Judge

12

1

**ATTESTATION**

2      I, Peter Karanjia, an ECF User whose ID and password are being used to file this JOINT

3   CASE MANAGEMENT PLAN AND [PROPOSED] ORDER, in compliance with N.D. Cal. Civil

4   Local Rule 5-1(i)(3), hereby attest that counsel for Defendants Marybel Batjer, Commissioner and

5   President of the California Public Utilities Commission, Liane M. Randolph, Martha Guzman

6   Aceves, Clifford Rechtschaffen, and Genevieve Shiroma, Commissioners of the California Public

7   Utilities Commission, has concurred with this filing.

8   Dated:  September 18, 2020

9

DLA PIPER LLP (US)

10

11      By:    */s/ Peter Karanjia*
            Peter Karanjia (admitted *pro hac vice*)
12            Attorneys for Plaintiff MetroPCS California, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28