**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

PETER KARANJIA (admitted pro hac vice)
**DLA PIPER LLP (US)**
500 8th Street, NW
Washington, D.C. 20004
Tel.: (202) 799-4135
E-mail: peter.karanjia@dlapiper.com

MELANIE WALKER (State Bar No. 336994)
**DLA PIPER LLP (US)**
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067
Tel.: (312) 368-4000
E-mail: melanie.walker@us.dlapiper.com

MARTIN L. FINEMAN (State Bar No. 104413)
GEOFFREY S. BROUNELL (admitted pro hac vice)
**DAVIS WRIGHT TREMAINE LLP**
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533
Tel.: (415) 276-6500
E-mail: martinfineman@dwt.com
         geoffreybrounell@dwt.com

Attorneys for Plaintiff MetroPCS California, LLC

Christine J. Hammond (State Bar No. 206768)
Jonathan C. Koltz (State Bar No. 268793)
Enrique Gallardo (State Bar No. 191670)
**CALIFORNIA PUBLIC UTILITIES COMMISSION, LEGAL DIVISION**
505 Van Ness Avenue
San Francisco, California 94102-6533
E-mail: enrique.gallardo@cpuc.ca.gov

Attorneys for Defendants

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO**

| | |
|---|---|
| METROPCS CALIFORNIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ALICE REYNOLDS, President of the California Public Utilities Commission, in her official capacity, et al.,<br><br>Defendants. | Case No. 3:17-cv-05959-JD<br><br>**JOINT STATEMENT OF ISSUES FOR TRIAL** |

Consistent with the Court's Order dated May 12, 2022 and directives at the May 12, 2022 Case Management Conference, the parties hereby submit a joint list of issues for the upcoming bench trial. To place those issues in context, the parties have included a summary of the claims in this case. The parties' list of issues for trial follows the summary of claims.

Also as directed, the parties propose March 1, 2023 as the start date for the bench trial and provide the following statements of their respective positions regarding the time needed for trial.

**MetroPCS's Position**: MetroPCS believes the case can be tried in three days if the CPUC will stipulate to certain facts that MetroPCS does not believe can reasonably be disputed or, alternatively, in only two days if the CPUC will so stipulate and MetroPCS is able to present part of its case in chief via one or more delarations (attaching pertinent documents) by fact witnesses whom the CPUC would have the opportunity to cross-examine at the trial; in that event, the trial would be streamlined to focus primarily on expert testimony.[1] If MetroPCS is not able to present part of its case in chief via declarations, and/or if the CPUC will not stipulate to certain facts,[2] MetroPCS estimates that five trial days will be needed. In any of these events, MetroPCS does not believe that the CPUC should need two full days to conduct cross-examination.

**CPUC's Position**: The CPUC believes it will require two full days for the CPUC to cross-examine MetroPCS's fact witnesses regarding the sufficiciency and accuracy of the documentation underlying MetroPCS's revenue figures and revenue allocations, and to cross-examine MetroPCS's expert witnesses. If MetroPCS also requires two full days, the total time for the trial would require four full days. The CPUC will agree to stipulate to undisputed facts, to be presented in a statement of undisputed facts prior to the trial. At this time, the CPUC does not agree to MetroPCS presenting part of its case in chief via declaration by fact witnesses.

**SUMMARY OF CLAIMS**

MetroPCS, a provider of prepaid wireless service, is challenging three Resolutions the

---

[1] MetroPCS anticipates that it would provide direct testimony for each such declarant (covering highlights of more granular and technical details contained in declarations) and make the declarants available for cross-examination by the CPUC.

[2] MetroPCS sent the CPUC a list of proposed stipulated facts on July 15, 2022, believing that if the parties could finalize those stipulations, that would aid in determining the amount of time needed for trial and the issues for trial. The CPUC is currently reviewing and further developing the stipulated facts.

1

CPUC adopted to implement California's Prepaid Mobile Telephony Services Surcharge Collection Act, enacted by Assembly Bill 1717 (Chapter 885, Statutes 2014, Perea) (the "Prepaid Act"). "Under the Prepaid Act, a single surcharge rate, which included a component funding state universal service programs, had to be 'imposed on each prepaid consumer.'" *MetroPCS California, LLC v. Picker*, 970 F.3d 1106, 1113 (9th Cir. 2020) ("*MetroPCS*") (citing Cal. Rev. & Tax. Code § 42010(a)(1), (b)(2)). "The surcharge was required to 'be imposed as a percentage of the sales price' of each purchase of prepaid services using a rate the CPUC would establish each year[.]" *Id.* (citing §§ 42010(a)(1), 42018(a), 42010(b)(2)) (footnotes omitted).

One Resolution at issue, which was adopted in November 2016, was effective from January 1, 2017 to December 31, 2017 (the "2017 Resolution"); another Resolution, which was adopted in October 2017, reaffirmed the first Resolution; and the final Resolution at issue, which was adopted in November 2017, was effective from January 1, 2018 to December 31, 2018 (the "2018 Resolution").

The CPUC adopted the annual prepaid surcharge rate and surcharge collection requirements through its Resolution process. "The first resolution (the '2016 Resolution') set a surcharge rate of 8.51%, which it stated applied only to 'intrastate revenues subject to surcharge.' But the 2016 Resolution did not specify how that amount of intrastate revenue was to be determined. In particular, nothing in the 2016 Resolution prevented prepaid providers from using any of the three FCC-recognized methods to do so." *MetroPCS*, 970 F.3d at 1113. The 2016 Resolution is not challenged here.

"The CPUC changed course in its next resolution (the '2017 Resolution'). The CPUC explained that, on further study, it had determined that the 2016 Resolution did not comply with the Prepaid Act. The CPUC now believed that the Prepaid Act required that the surcharge rate 'be applied to the total sales price' of prepaid services instead of only to 'the intrastate portion' of the sales price." *Id.* The 2017 Resolution "began by setting an initial surcharge rate of 7.0854% using the methods the CPUC had relied on in 2016. Then, because the CPUC had concluded that any surcharge rate had to apply to the 'total' prepaid sales price, the CPUC took the further step of adjusting that initial rate by what it called an 'intrastate allocation factor.' The CPUC calculated

2

an intrastate allocation factor of 72.75% based on the percentages of intrastate revenue reported by prepaid providers. The result was a 5.15% adjusted surcharge rate (7.0854% multiplied by the intrastate allocation factor of 72.75%), which the 2017 Resolution specified applied to the entire sales price." *Id.* at 1114. "The next CPUC resolution (the '2018 Resolution') took the same approach as the 2017 Resolution, but with updated rates. As relevant here, it adopted a new intrastate allocation factor of 69.45% for determining prepaid intrastate revenue subject to surcharge." *Id.*

"[T]he CPUC resolutions required all prepaid providers to apply a uniform, flat-rate 'intrastate allocation factor' to determine their intrastate revenues. Providers of postpaid services, by contrast, were not governed by the resolutions and were free to use any of the three FCC-recognized methods [i.e., revenue-allocation methods recognized by the Federal Communications Commission] to determine their intrastate revenues for purposes of calculating surcharges owed to the CPUC." *MetroPCS*, 970 F.3d at 1110. The CPUC calculated an intrastate allocation factor for all prepaid providers of 72.75% for 2017 and 69.45% for 2018. *Id.* at 1114. In light of its pending challenge to the Resolutions, "MetroPCS did not comply with the 2017 and 2018 Resolutions' requirement that it use the intrastate allocation factor to determine the intrastate portion of the sales price subject to CPUC surcharge." *Id.* at 1115. Rather, MetroPCS submitted surcharges for 2017 and 2018 based on the methodologies that it used before the Prepaid Act.

MetroPCS challenged the Resolutions covering the 2017 and 2018 periods as "preempted both facially and as applied to MetroPCS." *Id.* at 1115.

**MetroPCS Position Statement**: As the case currently stands, MetroPCS asserts the following as-applied preemption claims: (1) by applying the CPUC's surcharge to the total sales price of prepaid wireless plans, subject to an "intrastate allocation factor" that assumes that 72.75% (in 2017) or 69.45% (in 2018) of revenues were from intrastate voice service (or other surchargeable intrastate telecommunications service) included in MetroPCS's prepaid wireless plans, the Resolutions improperly assess the surcharge on MetroPCS's revenues from broadband Internet access service ("broadband") and other non-surchargeable services, in violation of the federal Communications Act and FCC orders; (2) the Resolutions unfairly discriminate against MetroPCS

3

Case No. 3:17-cv-05959-JD
Joint Statement of Issues for Trial

1  as a prepaid carrier (as compared with postpaid carriers, which were not subject to the Resolutions)
2  by imposing a substantially higher surcharge burden on MetroPCS, in violation of 47 U.S.C. §
3  254(f) and the FCC's requirement of "competitive neutrality"; and (3) the Resolutions rely on an
4  "intrastate allocation factor" or "intrastate factor" created by the CPUC that is based on a
5  fundamentally flawed methodology. The CPUC denies the above claims.

6  **CPUC Position Statement**: The CPUC asserts that MetroPCS has never provided evidence
7  that the CPUC Resolutions actually assessed any surcharges on MetroPCS' non-surchargeable
8  revenues. The CPUC asserts that MetroPCS must document the actual dollar amount of alleged
9  impermissible assessment; hypothetical or theoretical demonstrations cannot prove as-applied
10 preemption. The CPUC asserts that MetroPCS has not adequately documented its revenues subject
11 to state and federal surcharges, in violation of FCC rules, so that MetroPCS cannot provide an
12 accurate accounting assessment of its revenues. The CPUC asserts that MetroPCS' revenue
13 allocation methodologies for 2017 and 2018 inaccurately overestimate its revenues allocated to
14 non-telecommunications services (e.g., broadband services), in violation of FCC rules, thus
15 underpaying its state and federal universal service surcharge obligations. The CPUC disagrees that
16 its Resolutions unfairly discriminate against MetroPCS. The CPUC further maintains that "the
17 language and structure of the [Prepaid] Act require the usage of an intrastate allocation factor . . ."
18 *MetroPCS California, LLC v. Picker*, 348 F.Supp.3d 948, 965 (N.D. Cal. 2018), *reversed and*
19 *remanded on other grounds*, 970 F.3d 1106. The CPUC asserts that it used a reasonable
20 methodology supported by sufficient evidence to develop the intrastate allocation factor.

21 **MetroPCS Response**: MetroPCS does not believe that this joint statement of issues for
22 trial is the proper place for the parties to set forth what their respective arguments will be at trial.
23 In response to the CPUC's statement above, however, MetroPCS states as follows: MetroPCS
24 maintains that the evidence at trial will show that it used revenue allocation methodologies (*i.e.*, its
25 methodologies for distinguishing revenues from surchargeable services such as intrastate voice
26 service from non-surchargeable services such as mobile broadband contained in its prepaid wireless
27 plans) that are consistent with Generally Accepted Accounting Principles and methodologies
28 accepted by the Federal Communications Commission; that its revenue allocations (which were

4

based on rigorous analyses and well-supported by data, including contemporaneous documents) show that the CPUC improperly assessed surcharges on non-surchargeable revenue and unfairly discriminate against MetroPCS as a prepaid carrier; and that the CPUC's criticisms of MetroPCS's methodologies and revenue allocations lack merit.

## AGREED ISSUES FOR TRIAL

The parties agree that the following are issues to be decided at the trial:

1. Whether MetroPCS's revenue allocation methodologies during the 2017 to 2018 period were "reasonable" under the Federal Communications Commission's (FCC) *Bundling Order*.[3]

MetroPCS believes that the following additional issues are subsidiary to the above overarching question; the CPUC identifies a different overarching issue in the Disputed Issues below and believes that these additional issues identified here are subsidiary to it:

    a) Whether MetroPCS's revenue allocation methodology for January 1, 2017-August 31, 2018 was reasonable and supported by sufficient evidence. Specifically:

        (i) Whether there is sufficient evidence to support MetroPCS's determination that the best estimate of the standalone selling price for unlimited Voice service was $█[4] and the best estimate of the standalone selling price for Text was $█.

        (ii) Whether there is sufficient evidence to support MetroPCS's determination that the best estimate of the standalone selling price for 1 GB of 4G Data was $█.

        (iii) Whether MetroPCS's decision to use █ GB of 4G data, at a price of $█ per GB, as an estimate for the standalone selling price of unlimited data, was reasonable and supported by sufficient evidence.

---

[3] *Policy & Rules Concerning Interstate, Interexchange Marketplace*, 16 FCC Rcd. 7418, 7447-48 ¶¶ 50-54 (2001) ("*Bundling Order*").

[4] Highlighted text denotes information designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" under the Protective Order in this case. This information will be redacted in the publicly filed version of this document.

b) Whether MetroPCS's revenue allocation methodology for September 1, 2018-December 31, 2018 was reasonable and supported by sufficient evidence. Specifically:

  (i) Whether there is sufficient evidence to support MetroPCS's determination of the cost per megabyte (MB) of data, talk, and text.

  (ii) Whether there is sufficient evidence to support MetroPCS's determination of the average MBs per subscriber per month for data, talk, and text for each of its prepaid wireless plans.

In determining whether the CPUC's Resolutions would assess surcharges on non-surchargeable revenues (other than broadband), the Court may have to determine the subsidiary issue of whether the CPUC could assess surcharges on text messaging revenues in 2017 and 2018.

## DISPUTED ISSUES FOR TRIAL

The parties do not agree on the following issues for trial:

**MetroPCS Position:**

- MetroPCS asserts that the following is a factual issue for trial for purposes of its unfair discrimination claim: Whether the CPUC's Resolutions required MetroPCS to pay a higher surcharge than a similarly situated postpaid carrier would have been required to pay in surcharges to the CPUC during the same period. MetroPCS disputes the CPUC's characterizations of MetroPCS's as-applied unfair discrimination claim, as set forth in the statement of the CPUC's position below.

- MetroPCS agrees that an issue for trial is whether the CPUC's Resolutions assess surcharges on MetroPCS's broadband or other non-surchargeable revenues. However, MetroPCS disagrees with the CPUC's characterization of how MetroPCS can establish that the CPUC's Resolutions assess surcharges on broadband or other non-surchargeable revenues, as set forth in the statement of the CPUC's position below.

- MetroPCS contends that it can prevail on its as-applied preemption challenge by establishing *either* (i) that CPUC's Resolutions assess surcharges on MetroPCS's broadband or other non-surchargeable revenues *or* (ii) unfair discrimination against MetroPCS.

- MetroPCS contends that, if the Court concludes that MetroPCS's revenue allocation methodologies during the 2017 to 2018 period were reasonable and comport with the FCC's *Bundling Order*, it follows – based on MetroPCS's revenue allocations for its prepaid wireless plans compared to the CPUC's intrastate factors – that (1) the Resolutions did unlawfully assess surcharges on MetroPCS's broadband and other non-surchargeable revenues; and (2) that the Resolutions unfairly discriminated against MetroPCS by subjecting it to higher surcharges than would have applied to a similarly situated postpaid carrier.

- MetroPCS disputes that "[w]hether MetroPCS complied with certain FCC regulations (47 C.F.R. §§ 54.706, 54.709)" is an issue for trial, as set forth in the statement of the CPUC's position below. MetroPCS states that these FCC regulations (47 C.F.R. §§ 54.706, 54.709) are inapplicable to this case because those regulations address types of documents that the FCC's Universal Service Fund administrator (the Universal Service Administrative Company or "USAC") considers in USAC audits, and this Court is not performing an audit.

**CPUC Position**:

The CPUC disagrees with MetroPCS's characterization above in the Disputed Issues for Trial section and regarding what it needs to demonstrate to prevail on its as-applied preemption claim. The CPUC asserts that the following are issues for trial:

The CPUC asserts that the key factual issue is: Whether MetroPCS can show, using competent evidence of actual revenue figures, that the challenged CPUC Resolutions impermissibly double-assessed MetroPCS's surchargeable revenues, or impermissibly assessed a surcharge on non-surchargeable revenue.

Whether MetroPCS complied with certain FCC regulations (47 C.F.R. §§ 54.706, 54.709) that govern the procedures and types of records (including financial statements and supporting documentation; accounting records; historical customer records; general ledgers; and any other relevant documentation) needed to demonstrate its revenues subject to surcharge and compliance with federal universal service rules.

The CPUC disputes that MetroPCS can prevail on an unfair discrimination claim by comparison to a hypothetical "similarly situated postpaid carrier." The CPUC further asserts that

7

Case No. 3:17-cv-05959-JD
Joint Statement of Issues for Trial

any factual issue regarding "discriminatory assessment of surcharges" is identical to the factual issue of whether the CPUC's Resolutions would assess surcharges on non-surchargeable revenues.

Dated: August 12, 2022        Respectfully submitted,

**DLA PIPER LLP (US)**


By: ____/s/ Peter Karanjia_____

PETER KARANJIA (admitted *pro hac vice*)
MELANIE WALKER (State Bar No. 336994)

Attorneys for Plaintiff MetroPCS California, LLC


**CALIFORNIA PUBLIC UTILITIES COMMISSION, LEGAL DIVISION**


By: _____/s/ Enrique Gallardo_____

ENRIQUE GALLARDO (State Bar No. 191670)

Attorneys for Defendants Alice Reynolds, Commissioner and President of the California Public Utilities Commission, Darcie Houck, Clifford Rechtschaffen, John Reynolds, and Genevieve Shiroma, Commissioners of the California Public Utilities Commission