| | |
|---|---|
| 1 | Peter Karanjia (admitted *pro hac vice*) |
| | DLA PIPER LLP (US) |
| 2 | 500 8th Street, NW |
| | Washington, D.C. 20004 |
| 3 | Telephone: (202) 799-4135 |
| | Email: peter.karanjia@dlapiper.com |
| 4 | |
| | Melanie Walker (CA State Bar No. 336994) |
| 5 | DLA PIPER LLP (US) |
| | 2000 Avenue of the Stars, Suite 400 North Tower |
| 6 | Los Angeles, California 90067 |
| | Telephone: (312) 368-4000 |
| 7 | Email: melanie.walker@dlapiper.com |
| 8 | Martin L. Fineman (CA State Bar No. 104413) |
| | Geoffrey S. Brounell (admitted *pro hac vice*) |
| 9 | DAVIS WRIGHT TREMAINE LLP |
| | 505 Montgomery Street, Suite 800 |
| 10 | San Francisco, California 94111-6533 |
| | Telephone: (415) 276-6500 |
| 11 | Email: martinfineman@dwt.com |
| | geoffreybrounell@dwt.com |
| 12 | |
| 13 | Attorneys for Plaintiff MetroPCS California, LLC |
| 14 | Christine J. Hammond (CA State Bar No. 206768) |
| | Jonathan C. Koltz (CA State Bar No. 268793) |
| 15 | Enrique Gallardo (CA State Bar No. 191670) |
| | David W. Fermino (CA State Bar No. 154131) |
| 16 | California Public Utilities Commission, Legal Division |
| | 505 Van Ness Avenue |
| 17 | San Francisco, California 94102-6533 |
| | E-mail: enrique.gallardo@cpuc.ca.gov |
| 18 | Attorneys for Defendants |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| METROPCS CALIFORNIA, LLC, | Case No. 3:17-cv-05959-JD |
| Plaintiff, | **JOINT CASE MANAGEMENT STATEMENT** |
| v. | |
| ALICE REYNOLDS, President of the California Public Utilities Commission, in her official capacity, et al., | Date: March 2, 2023<br>Time: 10:00 AM<br>Judge: Hon. James Donato |
| Defendants. | |

Plaintiff MetroPCS California, LLC ("MetroPCS") and Defendants Alice Reynolds, President and Commissioner of the California Public Utilities Commission, Genevieve Shiroma, Darcie Houck, John Reynolds, and Karen Douglas, Commissioners of the California Public Utilities Commission (collectively, "Defendants" or the "CPUC"), respectfully submit the following Joint Case Management Statement pursuant to the Standing Order for Civil Cases Before Judge James Donato, the Standing Order for All Judges of the Northern District of California, and Civil Local Rule 16-9.

**1.  Jurisdiction and Service:**

    a.  Subject Matter Jurisdiction:

This civil action arises under the Communications Act of 1934, as amended, 47 U.S.C. §§ 151 *et seq.*; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; and the Commerce and Supremacy Clauses of the United States Constitution. This Court therefore has jurisdiction over this case under 28 U.S.C. § 1331. All Defendants are sued solely in their official capacities as Commissioners of the California Public Utilities Commission under *Ex parte Young*, 209 U.S. 123 (1908). *See, e.g.*, *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

    b.  Personal Jurisdiction: No issues exist regarding personal jurisdiction.

    c.  Venue: No issues exist regarding venue.

    d.  Service: No issues exist regarding service on Defendants.

**2.  Facts and Procedural History:**

*a. MetroPCS's Claims*

MetroPCS, a provider of prepaid wireless service,[1] is challenging three Resolutions adopted by the CPUC. The first Resolution, which was adopted in November 2016, was effective from January 1, 2017 to December 31, 2017; the second Resolution, which was adopted in October 2017, reaffirmed the first Resolution; and the third Resolution, which was adopted in November 2017, was effective from January 1, 2018 to December 31, 2018.

---

[1] Consumers of "prepaid" wireless service pay in advance of service. By contrast, consumers of "postpaid" service are billed the month after using service.

The Resolutions require wireless carriers (such as MetroPCS) that provide prepaid wireless service in California to assess the state's prepaid mobile telephony services surcharge, as defined by the California Prepaid Mobile Telephony Services Surcharge Collection Act, enacted by Assembly Bill 1717 (Chapter 885, Statutes 2014, Perea) (the "Prepaid Act"), on the sales of prepaid wireless plans to the public.

As the Ninth Circuit explained in this case, "the CPUC resolutions required all prepaid providers to apply a uniform, flat-rate 'intrastate allocation factor' to determine their intrastate revenues. Providers of postpaid services, by contrast, were not governed by the resolutions and were free to use any of the three FCC-recognized methods [i.e., revenue-allocation methods recognized by the Federal Communications Commission] to determine their intrastate revenues for purposes of calculating surcharges owed to the CPUC." *MetroPCS California, LLC v. Picker*, 970 F.3d 1106, 1110 (9th Cir. 2020). The CPUC calculated an intrastate allocation factor for all prepaid providers of 72.75% for 2017 and 69.45% for 2018. *Id.* at 1114.

MetroPCS challenged the Resolutions covering the 2017 and 2018 periods as "'preempted both facially and as applied to MetroPCS.'" *Id.* at 1115. MetroPCS's operative complaint alleges that the Resolutions are preempted on five independent grounds, only three of which are now relevant in light of the Court's rulings on the parties' cross-motions for summary judgment: (1) by applying the CPUC's surcharge to the total sales price of prepaid wireless plans, subject to an "intrastate allocation factor" that assumes that 72.75% (in 2017) or 69.45% (in 2018) of revenues were from surchargeable intrastate telecommunications service included in MetroPCS's prepaid wireless plans, the Resolutions improperly assess the surcharge on MetroPCS's revenues from broadband Internet access service and other non-surchargeable services, in violation of the federal Communications Act and FCC orders; (2) the Resolutions unfairly discriminate against MetroPCS as a prepaid carrier (as compared with postpaid carriers, which were not subject to the Resolutions) by imposing a substantially higher surcharge burden on MetroPCS, in violation of 47 U.S.C. § 254(f) and the FCC's requirement of "competitive neutrality"; and (3) the Resolutions rely on an "intrastate allocation factor" or "intrastate factor" created by the CPUC that is based on a fundamentally flawed methodology.

The CPUC denies these claims.

*b. Procedural History*

On November 5, 2018, Judge Illston granted summary judgment in favor of MetroPCS, finding that the Resolutions and the Prepaid Act were *facially* preempted. Dkt. 88 (reported at 348 F. Supp. 3d 948 (N.D. Cal. 2018)).

The CPUC appealed. Dkt. 96. In an opinion issued on August 14, 2020, the Ninth Circuit reversed the District Court's facial invalidation of the Resolutions and the Prepaid Act, but remanded the case for the District Court to consider MetroPCS's as-applied challenges. *MetroPCS*, 970 F.3d at 1110, 1126.

On September 21, 2021, on remand from the Ninth Circuit, Judge Illston granted in part and denied in part cross-motions for summary judgment on MetroPCS's as-applied challenges. Dkt. 152. Specifically, Judge Illston dismissed MetroPCS's claim alleging preemption under the Mobile Telecommunications Sourcing Act, 4 U.S.C. §§ 116 *et seq.*, and MetroPCS's claim based on the MTS Increment, but recognized that disputed issues of material fact remained and that neither party was entitled to judgment as a matter of law. *Id.* at 8-13. The Court discussed an FCC order that recognizes that wireless carriers may allocate their revenues between elements of a "bundle" (e.g., broadband data, voice, and text messaging services) by relying on one of two "safe harbor" approaches or, alternatively, "'us[ing] allocation methods other than the two described above,'" subject to review for reasonableness. *Id.* at 7-8 (quoting *Policy & Rules Concerning Interstate, Interexchange Marketplace*, 16 FCC Rcd. 7418, 7447-48 ¶¶ 50-53 (2001) ("*Bundling Order*")). The Court noted MetroPCS's position that its revenue-allocation methodologies comported with Generally Accepted Accounting Principles and were reasonable under the *Bundling Order*, *id.* at 7, but concluded that these were fact issues for trial, *id.* at 8-9.

Judge Illston set a pre-trial hearing for concurrent expert testimony for May 18, 2022, and a 5-day bench trial to commence on June 13, 2022. Dkt. 166. On February 3, 2022, this case was reassigned to Judge Donato. Dkt. 171. All pending pre-trial and trial dates were vacated by this Court on March 10, 2022. Dkt. 177.

///

**3. Bench Trial and Issues for Trial:**

The parties request a bench trial at the earliest available date convenient to the Court, and provide the following statement regarding the time needed for trial and efforts to streamline the trial.

The parties believe the case can be tried in two days, as they stipulate to present part of their cases in chief via one or more delarations (attaching pertinent documents) by fact witnesses whom the other party would have the opportunity to cross-examine at the trial.[2]

As directed by the Court, on August 12, 2022, the parties filed a Joint Statement of Issues for Trial. Dkt. 183.[3]

**4. Motions:**

There are no pending motions.

MetroPCS intends to file a motion to exclude the testimony of the CPUC's putative expert pursuant to Fed. R. of Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The CPUC may file a motion to exclude all or part of the testimony of one of MetroPCS's two putative experts pursuant to Fed. R. of Evid. 402 and 702.

MetroPCS and the CPUC reserve the right to file other motions *in limine* prior to trial.

**5. Amendment of Pleadings:**

MetroPCS filed its original Complaint on October 17, 2017. Dkt. 1. After the CPUC issued its Resolution imposing an intrastate factor for calendar year 2018, MetroPCS amended its complaint to add a challenge to that Resolution. Dkt. 32. After the FCC issued a relevant order, MetroPCS filed the operative complaint—the Second Amended Complaint—on January 19, 2018. Dkt. 49. On January 19, 2018, the parties stipulated that Defendants' previously filed Answer

---

[2] MetroPCS anticipates that it would provide direct testimony for each such declarant (covering highlights of more granular and technical details contained in declarations) and make the declarants available for cross-examination by the CPUC. MetroPCS believes that declarations will substantially streamline the trial and more efficiently enable the Court to digest technical material (e.g., descriptions of MetroPCS's revenue-allocation methodologies and related Generally Accepted Accounting Principles).

[3] As directed, the parties filed an unredacted version of the Joint Statement the following month. Dkt. 185.

would be deemed responsive to the Second Amended Complaint. Dkt. 48.

**6.** **Evidence Preservation:**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7.** **Disclosures:**

The parties served their initial disclosures on or before December 20, 2017.

**8.** **Discovery:**

Fact discovery closed on March 9, 2018, and the parties completed expert discovery on April 22, 2022.

**9.** **Class Actions:**

This is not a class action.

**10.** **Related Cases:**

The parties are unaware of any related cases within the meaning of Local Rule 3-12.

**11.** **Relief:**

MetroPCS is seeking declaratory relief; an injunction; an award of MetroPCS's costs and expenses, including reasonable attorneys' fees and costs of suit; and any other and additional relief the Court may deem just and proper. The CPUC denies that MetroPCS is entitled to such relief.

**12.** **Settlement and ADR:**

The parties have complied with ADR L.R. 3-5. On March 1, 2018, the parties participated in mediation before Magistrate Judge Elizabeth D. Laporte. The mediation did not result in a settlement. Dkt. 56. MetroPCS and the CPUC remain open to exploring settlement.

**13.** **Consent to Magistrate:**

Consent to assignment for all purposes to a Magistrate Judge has been declined.

**14.** **Other References:**

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15. Narrowing of Issues:**

The parties will stipulate to certain facts, as well as the authenticity and/or admissibility of certain evidence that MetroPCS intends to introduce at trial. The parties will consider whether the issues can be further narrowed by stipulation.

**16. Expedited Trial Procedure:**

The parties do not believe that this case is suitable for the expedited trial procedure.

**17. Scheduling:**

As noted above, the parties respectfully request the scheduling of a bench trial at the Court's earliest available date. The parties' positions regarding the scope and format of the bench trial are set forth in Section 3 (at page 5), above.

The parties also jointly propose the following pre-trial schedule:

| | |
|---|---|
| MetroPCS to submit declaration(s) of fact witnesses in lieu of live testimony (if authorized by the Court) | [At least 30 days before first day of bench trial] _____, 2023 |
| Parties submit their respective expert reports to the Court | [At least 30 days before first day of bench trial] _____, 2023 |
| Parties exchange exhibit and witness lists | [At least 30 days before first day of bench trial] _____, 2023 |
| Parties file concurrent trial briefs with the Court | [One week before first day of bench trial] _____, 2023 |
| Parties submit a joint list of issues to be addressed by the experts at the trial (identifying the areas of agreement and disagreement between the experts) | [One week before first day of bench trial] _____, 2023 |
| Parties submit stipulations of facts | [One week before first day of bench trial] _____, 2023 |
| Parties exchange any demonstratives they or their experts intend to use at trial | [One day before first day of bench trial] _____, 2023 |
| Pre-trial conference | _____, 2023 |
| Bench trial (estimated 2 days)[4] | _____, 2023 or earliest available date thereafter |

---

[4] *See* Section 3, *supra*.

**18. Trial:**

The parties request a 2-day bench trial.

**19. Disclosure of Non-Party Interested Entities or Persons:**

MetroPCS states as follows:

MetroPCS California, LLC, a Delaware limited liability company, is a wholly-owned subsidiary of T-Mobile USA, Inc., a Delaware corporation. T-Mobile USA, Inc. is a wholly-owned subsidiary of T-Mobile US, Inc., a Delaware corporation. T-Mobile US, Inc. (NASDAQ: TMUS) is a publicly traded company listed on the NASDAQ Global Select Market of NASDAQ Stock Market LLC ("NASDAQ"). Deutsche Telekom Holding B.V., a limited liability company (*besloten vennootschap met beperkte aansprakelijkheidraies*) organized and existing under the laws of the Netherlands ("DT B.V."), owns more than 10% of the shares of T-Mobile US, Inc. DT B.V. is a direct wholly-owned subsidiary of T-Mobile Global Holding GmbH, a Gesellschaft mit beschränkter Haftung organized and existing under the laws of the Federal Republic of Germany ("Holding"). Holding is, in turn, a direct wholly-owned subsidiary of T-Mobile Global Zwischenholding GmbH, a Gesellschaft mit beschränkter Haftung organized and existing under the laws of the Federal Republic of Germany ("Global"). Global is a direct wholly-owned subsidiary of Deutsche Telekom AG, an Aktiengesellschaft organized and existing under the laws of the Federal Republic of Germany ("Deutsche Telekom"). The principal trading market for Deutsche Telekom's ordinary shares is the trading platform "Xetra" of Deutsche Börse AG. Deutsche Telekom's ordinary shares also trade on the Frankfurt, Berlin, Düsseldorf, Hamburg, Hannover, München, and Stuttgart stock exchanges in Germany. Deutsche Telekom's American Depositary Shares ("ADSs"), each representing one ordinary share, trade on the OTC market's highest tier, OTCQX International Premier (ticker symbol: "DTEGY").

Additionally, SoftBank Group Corp., through its wholly owned subsidiary, Delaware Project 6 L.L.C, beneficially owns approximately 3.2% of T-Mobile US, Inc. common stock outstanding. Masayoshi Son owns more than 10% of SoftBank Group Corp.

Defendants are not required to file this certificate.

**20. Professional Conduct:**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21. Other:**

There are no other issues that the parties currently wish to raise with the Court.

///

8

Dated: February 23, 2023

Respectfully Submitted,

DLA PIPER LLP (US)

By: */s/ Peter Karanjia*
   Peter Karanjia (admitted *pro hac vice*)
   Melanie Walker (CA State Bar No. 294841)

   Attorneys for Plaintiff
   MetroPCS California, LLC

CALIFORNIA PUBLIC UTILITIES
COMMISSION, LEGAL DIVISION

By: */s/ Enrique Gallardo*
   Enrique Gallardo (CA State Bar No. 191670)

   Attorneys for Defendants Alice Reynolds,
   Commissioner and President of the California
   Public Utilities Commission, Genevieve
   Shiroma, Darcie Houck, John Reynolds, and
   Karen Douglas, Commissioners of the California
   Public Utilities Commission

**ATTESTATION**

I, Peter Karanjia, an ECF User whose ID and password are being used to file this JOINT CASE MANAGEMENT STATEMENT, in compliance with N.D. Cal. Civil Local Rule 5-1(i)(3), hereby attest that counsel for Defendants Alice Reynolds, President and Commissioner of the California Public Utilities Commission, and Genevieve Shiroma, Darcie Houck, John Reynolds, and Karen Douglas, Commissioners of the California Public Utilities Commission, has concurred with this filing.

Dated: February 23, 2023

                            DLA PIPER LLP (US)

                            By: */s/ Peter Karanjia*
                                Peter Karanjia (admitted *pro hac vice*)
                                Attorneys for Plaintiff MetroPCS California, LLC