Peter Karanjia (admitted *pro hac vice*)
DLA PIPER LLP (US)
500 8th Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4135
Email: peter.karanjia@dlapiper.com

Melanie Walker (CA State Bar No. 336994)
DLA PIPER LLP (US)
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067
Telephone: (312) 368-4000
Email: melanie.walker@us.dlapiper.com

Martin L. Fineman (CA State Bar No. 104413)
Geoffrey S. Brounell (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
50 California Street, Suite 2300
San Francisco, California 94111
Telephone: (415) 276-6500
Email: martinfineman@dwt.com
geoffreybrounell@dwt.com

Attorneys for Plaintiff
MetroPCS California, LLC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| METROPCS CALIFORNIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ALICE B. REYNOLDS, President of the California Public Utilities Commission, in her official capacity; KAREN DOUGLAS, Commissioner of the California Public Utilities Commission, in her official capacity; DARCIE L. HOUCK, Commissioner of the California Public Utilities Commission, in her official capacity; JOHN REYNOLDS, Commissioner of the California Public Utilities Commission, in his official capacity; and GENEVIEVE SHIROMA, Commissioner of the California Public Utilities Commission, in her official capacity,<br><br>Defendants. | Case No. 3:17-cv-05959-JD<br><br>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date: April 27, 2023<br>Time: 10:00 a.m.<br>Place: Courtroom 11, 19th Floor<br><br>Before the Honorable James Donato<br><br>Complaint Filed: Oct. 17, 2017<br>Second Am. Complaint Filed: Jan. 19, 2018<br>Reserved Trial Date: May 30, 2023 |

# TABLE OF CONTENTS

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 3 |
| I. The Court Should Deny the CPUC's Cross-Motion for Summary Judgment, Which Disregards the Evidence Before This Court, and Reject the CPUC's Flawed Arguments Concerning MetroPCS's Evidentiary Burden. | 3 |
|     A. MetroPCS's Plan-by-Plan Comparisons Are Consistent with Precedent. | 4 |
|     B. In Any Event, MetroPCS Has Met the Burden Posited by the CPUC. | 6 |
| II. The CPUC Has Failed to Establish Any Genuine Issue of Fact That Would Preclude Summary Judgment in MetroPCS's Favor. | 7 |
|     A. The CPUC's Criticisms of the Building Block Method Lack Merit. | 7 |
|     B. The CPUC's Criticisms of the Cost-Plus-a-Margin Method Lack Merit. | 10 |
|     C. The CPUC's Contention That It Properly Assessed Text Messaging Revenues in 2017 and 2018 Is Wrong and Irrelevant. | 12 |
|     D. The CPUC's Efforts to Rewrite the Prior Audits Are Unavailing. | 13 |
|     E. The CPUC's Intrastate Factors Are Not Reasonable or Entitled to Deference. | 14 |
| CONCLUSION | 15 |

i

PLAINTIFF'S REPLY BRIEF ISO MSJ AND OPPOSITION TO DEFENDANTS' MSJ
*MetroPCS California, LLC v. Reynolds*, Case No. 3:17-cv-05959-JD

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Supply Co. v. Compwest Roofing Sys., Inc.*,
    2008 WL 410107 (D. Or. Feb. 11, 2008) ........................................................................... 7

*AT&T Corp. v. Pub. Util. Comm'n*,
    373 F.3d 641 (5th Cir. 2004) ............................................................................................ 5

*Bias v. Moynihan*,
    508 F.3d 1212 (9th Cir. 2007) .......................................................................................... 7

*Clallam County v. Dep't of Transp.*,
    849 F.2d 424 (9th Cir. 1988) .......................................................................................... 15

*Hoffman v. Tonnemacher*,
    593 F.3d 908 (9th Cir. 2010) .......................................................................................... 11

*Kovacevich v. Kent State Univ.*,
    224 F.3d 806 (6th Cir. 2000) .......................................................................................... 11

*MetroPCS Cal., LLC v. Picker*,
    970 F.3d 1106 (9th Cir. 2020) ............................................................................... 4, 5, 13

*Tex. Off. of Pub. Util. Couns. v. FCC*,
    183 F.3d 393 (5th Cir. 1999) ............................................................................................ 4

*Tzu Chien Chen v. Thomas & Betts Corp.*,
    2005 U.S. Dist. LEXIS 16010 (N.D. Cal. July 13, 2005) ............................................. 5, 6

**Regulations**

47 C.F.R. § 54.706 .................................................................................................................. 5, 6

**Administrative Decisions**

*Policy & Rules Concerning the Interstate, Interexchange Marketplace*,
    16 FCC Rcd. 7418 (2001) ................................................................................................ 7

*Petitions for Declaratory Ruling on Regulatory Status of Wireless Messaging Service*,
    33 FCC Rcd. 12075 (2018) ............................................................................................ 13

**Other Authorities**

Black's Law Dictionary (10th ed. 2015) ..................................................................................... 15

Webster's Legal Dictionary (1st ed. 1996) ................................................................................. 15

ii

PLAINTIFF'S REPLY BRIEF ISO MSJ AND OPPOSITION TO DEFENDANTS' MSJ
*MetroPCS California, LLC v. Reynolds*, Case No. 3:17-cv-05959-JD

**INTRODUCTION**

On the merits and the record before this Court on the parties' present cross-motions for summary judgment, MetroPCS is entitled to judgment in its favor: The undisputed evidence shows that MetroPCS's methodologies for allocating revenue between the voice, text, and data components of its prepaid wireless plans were consistent with GAAP's neutral and objective guidance for revenue allocation and with economic principles followed by the FCC. These methodologies accordingly were reasonable as a matter of law. The undisputed evidence also shows that MetroPCS exercised reasonable judgment in applying those methodologies. And the undisputed evidence shows that the Resolutions impermissibly imposed surcharges on MetroPCS's broadband and other nonsurchargeable revenue—whether viewed by comparing MetroPCS's revenue allocations on a plan-by-plan basis with the CPUC's intrastate factors, or on a total revenue basis—and violated the FCC's competitive neutrality requirement.

Recognizing this, the CPUC argues that the Court should not decide the motions on the merits at all. Instead, the CPUC argues that this Court should disregard ***all*** of the evidence submitted by MetroPCS in support of its renewed motion—notwithstanding that virtually all of the documents were produced to the CPUC well over a year ago (or more), the evidence relied upon by MetroPCS's experts was provided to and fully addressed by the CPUC's putative expert over a year ago, and the evidence the CPUC seeks to strike is evidence ***the CPUC*** (not MetroPCS) has argued is necessary for MetroPCS to meet its evidentiary burden. For the reasons set forth in MetroPCS's Opposition to the CPUC's Motion to Strike, the CPUC's position has no basis in law or fact, and should be rejected. Indeed, it would make no sense for the Court to allow the parties to submit new motions for summary judgment, but limit them to the record as it existed years ago and ignore the expanded factual record that would have been introduced at trial.

In support of its cross-motion for summary judgment, the only argument the CPUC makes is that *in its prior motion for summary judgment*, MetroPCS "failed to describe an actual amount of revenue that it claims was impermissibly surcharged, thus failing its burden of production." Cross-MSJ at 7. In other words, the CPUC tacitly admits that on the *current record*—which includes MetroPCS's actual revenue figures and a calculation of the total amount impermissibly

surcharged—the CPUC is *not* entitled to summary judgment. As explained below, evidence of total revenues is not legally required to establish preemption, and MetroPCS's evidence of actual revenue allocations for its individual wireless plans (submitted in its earlier motion and again here) is hardly "hypothetical." On any view of the evidence, the CPUC's cross-motion should be denied.

As for MetroPCS's revenue allocation methodologies, the CPUC does not contest MetroPCS's explanation of the plain meaning of the word "reasonable" in the *Bundling Order*. Nor does the CPUC dispute that an allocation methodology that comports with GAAP would be reasonable as a matter of law. The CPUC also makes no effort to contest the relevance of the economic principles cited by Dr. Rosston in assessing a methodology's reasonableness under the *Bundling Order*. Instead, the CPUC is left to quibble with MetroPCS's determination of the best estimate of the standalone selling price for broadband data. But the CPUC points to no evidence that the Bundle Valuation Committee ("BVC") ignored and identifies no different estimate that should have applied. This fails to establish a genuine issue for trial.

The CPUC again complains that MetroPCS's current motion and supporting declarations contain additional evidence beyond the documents submitted with MetroPCS's earlier motion, specifically regarding the "cost plus a margin" methodology, and baselessly attacks the credibility of MetroPCS's fact witness. The reason for this is obvious: The CPUC does not have a shred of evidence calling that methodology or its inputs into doubt, and its putative expert—who had the same data and information as MetroPCS's experts as of *14 months ago*—has no legitimate basis to question it.

Ultimately, the CPUC is left to argue that MetroPCS's methodologies were unreasonable *if* the Court both ignores the evidence *and* imposes a nonexistent evidentiary burden—that is, that MetroPCS must provide all records that *may* be required in a *USAC audit* to demonstrate compliance with the FCC's Universal Service rules. But this Court is not performing an audit. It is deciding a civil action governed by the Federal Rules of Evidence, Federal Rules of Civil Procedure, and ordinary burdens of proof set forth in controlling legal precedent. In any event, MetroPCS has produced precisely the types of proof the CPUC demands.

2

PLAINTIFF'S REPLY BRIEF ISO MSJ AND OPPOSITION TO DEFENDANTS' MSJ
*MetroPCS California, LLC v. Reynolds*, Case No. 3:17-cv-05959-JD

The Court should grant MetroPCS summary judgment, declare the contested Resolutions preempted and unlawful, and enjoin enforcement of those Resolutions against MetroPCS.

**ARGUMENT**

**I. The Court Should Deny the CPUC's Cross-Motion for Summary Judgment, Which Disregards the Evidence Before This Court, and Reject the CPUC's Flawed Arguments Concerning MetroPCS's Evidentiary Burden.**

In its earlier motion for summary judgment, MetroPCS introduced evidence that the Resolutions imposed unlawful surcharge assessments on mobile broadband and other nonsurchargeable revenues by comparing (1) MetroPCS's revenue allocations (expressed as percentages of wireless plan revenues assigned to Data, Text, and intrastate Voice service) for its individual plans during the 2017-2018 period with (2) the CPUC's intrastate factor percentage (72.75% in 2017 and 69.45% in 2018) under the contested Resolutions. *See* MetroPCS Second MSJ (Dkt. 112) at 27-31. As explained below, this evidence is sufficient to meet MetroPCS's burden of proof and it conclusively establishes that the contested Resolutions are preempted as applied to MetroPCS.

In opposing MetroPCS's earlier motion, the CPUC argued that MetroPCS was required to present evidence of its total revenues in order to establish preemption. *See* CPUC Second Cross-MSJ (Dkt. 123) at 19-21. Likewise, in the parties' Joint Statement of Issues for Trial, the CPUC stated: "The CPUC asserts that the key factual issue is: Whether MetroPCS can show, using competent evidence of actual revenue figures, that the challenged CPUC Resolutions impermissibly double-assessed MetroPCS's surchargeable revenues, or impermissibly assessed a surcharge on non-surchargeable revenue." Joint Statement of Issues for Trial (Dkt. 183) at 7. Notwithstanding the fact that actual revenues are not legally required to establish as-applied preemption (*see infra* pp. 4-6), MetroPCS provided evidence of its total revenues with its current summary judgment motion, and was prepared to offer that evidence at trial.

Deprived of its primary argument for evading preemption, the CPUC argues that the Court should disregard the very evidence the CPUC invited MetroPCS to present. For the reasons set forth in MetroPCS's Opposition to the CPUC's Motion to Strike, the Court should reject this

gamesmanship. Based on the record evidence properly before it, the Court should deny the CPUC's cross-motion for summary judgment and enter summary judgment in favor of MetroPCS.

### A. MetroPCS's Plan-by-Plan Comparisons Are Consistent with Precedent.

The CPUC is incorrect when it asserts—without any supporting authority—that MetroPCS cannot establish unlawful surcharge assessments on mobile broadband and other nonsurchargeable revenues by comparing (1) MetroPCS's revenue allocations (expressed as percentages of wireless plan revenues assigned to Data, Text, and intrastate Voice service) for its individual plans with (2) the CPUC's intrastate factor percentages under the contested Resolutions.

That approach—focusing on individual MetroPCS wireless plans—is fully consistent with how the Ninth Circuit examined MetroPCS's preemption claims. *See MetroPCS Cal., LLC v. Picker*, 970 F.3d 1106, 1122-23 (9th Cir. 2020) (discussing example of a carrier offering a $100 voice-only plan). And there is nothing "hypothetical" (CPUC Cross-MSJ at 8) about MetroPCS's calculations. MetroPCS pointed to *actual* prepaid cell phone plans it offered to California customers during the relevant period. *See* MetroPCS MSJ at 6-7, 19-22; Barnes Decl. ¶¶ 94-95, 99-100 & Exs. A, B. Moreover, the allocations for those plans (*i.e.*, percentages of revenues assigned to Data, Text, and intrastate Voice components of a bundle) demonstrate—as a matter of basic mathematics—that the CPUC's intrastate factor resulted in unlawful assessments on broadband, nonsurchargeable text messaging service, and interstate Voice service. *See* MetroPCS MSJ at 19-22; Barnes Decl. ¶¶ 94-102 & Exs. A, B. MetroPCS also showed the *actual* amount of surcharges for each of its prepaid plans under the intrastate factor and compared those numbers with the surcharge amounts that would have been due if MetroPCS had been a postpaid (rather than a prepaid) carrier. *See* Barnes Decl. ¶¶ 104-113 & Exs. BB, CC. The calculations, too, are not hypothetical.[1]

The CPUC is also wrong when it asserts that unlawful assessments can only be established by examining MetroPCS's "total revenues." *See, e.g.*, Cross-MSJ at 8, 19. In support of this position, the CPUC relies heavily on an FCC rule concerning documents that USAC *may* consider when it

---

[1] To the extent the CPUC contends that MetroPCS must identify specific postpaid carriers who were favored (as compared with MetroPCS), no precedent supports that proposition. *See, e.g.*, *Tex. Off. of Pub. Util. Couns. v. FCC*, 183 F.3d 393, 433-45 (5th Cir. 1999) (upholding competitive-neutrality claim without identifying favored carriers).

4

conducts *audits* of carriers' federal Universal Service Fund contributions. *See* CPUC Cross-MSJ at 7, 9, 19 (relying on 47 C.F.R. § 54.706); Decision on Second MSJs (Dkt. 152) at 8 (Judge Illston's prior opinion on summary judgment, citing same rule).[2] But this is a civil action—not a USAC audit. This Court does not need to audit MetroPCS's revenues to determine that the Resolutions are preempted; rather, the question for the Court is whether, based on the extensive evidence presented, MetroPCS has shown that the Resolutions impermissibly imposed surcharges on nonsurchargeable revenue or otherwise violated the FCC's competitive neutrality requirement.

On that score, relevant precedent refutes the proof requirement manufactured by the CPUC. That is clear from the Fifth Circuit's decision in *AT&T*, which the Ninth Circuit followed here. *See MetroPCS*, 970 F.3d at 1121. *AT&T* involved a preemption challenge to Universal Service fees that the Texas PUC imposed on "multijurisdictional carriers" (*i.e.*, carriers providing both interstate and intrastate services). To determine whether the fees resulted in unlawful assessments subject to preemption, the Court compared the fees applicable to multijurisdictional carriers (expressed as percentage rates applied to revenues) with the fees (also expressed as percentage rates) applicable to "pure-interstate-provider competitors." *AT&T Corp. v. Pub. Util. Comm'n*, 373 F.3d 641, 646–47 (5th Cir. 2004). The Court never mentioned AT&T's total revenues. *See id*. Indeed, the Court made it clear that the successful preemption claim did *not* turn on any proof of total revenues.[3]

Likewise, the CPUC's citation to a case for the proposition that "injuries must be shown with reasonable certainty" is inapposite. This is not a breach-of-contract or negligence case in which MetroPCS is seeking damages from the CPUC. *See Tzu Chien Chen v. Thomas & Betts Corp.*, 2005 U.S. Dist. LEXIS 16010, *15-16 (N.D. Cal. July 13, 2005) (cited in Cross-MSJ at 9) (addressing

---

[2] On its face, the FCC rule imposes document retention requirements *for USAC audits* and states that carriers contributing to the federal USF must retain "all records that may be required to demonstrate **to auditors** that the contributions made were in compliance with the Commission's universal service rules." 47 C.F.R. § 54.706(e) (emphasis added). It then provides a nonexhaustive list of types of documents that the USAC auditors may consider: "These records shall include without limitation the following: Financial statements and supporting documentation; accounting records; historical customer records; general ledgers; and any other relevant documentation." *Id.*

[3] The Court observed that "AT&T has not, and admittedly cannot, present evidence that its universal service fee obligation outweighs its intrastate revenues. Nevertheless, *the absence of such evidence does not defeat its assertion that the state regulation is discriminatory*." *Id.* at 647 (emphasis added). The Court added that, "*[r]egardless of the amount of intrastate revenues a carrier earns*, the double assessment of interstate revenue puts multijurisdictional carriers at a distinct competitive disadvantage compared with the pure interstate carriers." *Id.* (emphasis added).

5

PLAINTIFF'S REPLY BRIEF ISO MSJ AND OPPOSITION TO DEFENDANTS' MSJ
*MetroPCS California, LLC v. Reynolds*, Case No. 3:17-cv-05959-JD

proof of damages in breach-of-contract action). Rather, this is a federal preemption action in which MetroPCS can prevail by showing that the contested Resolutions (i) imposed surcharges on MetroPCS's revenues from nonsurchargeable broadband, text messaging, and/or interstate voice service revenues, *see* MetroPCS MSJ at 19-23, or (ii) subjected MetroPCS to higher surcharges than a similarly situated postpaid carrier would have been required to remit, *id.* at 23-25. In either event, the Resolutions are contrary to federal law, preempted, and unenforceable. This Court need not conduct an audit or an accounting to reach either conclusion as a matter of law.

For the same reasons that the CPUC errs in contending that MetroPCS is required to prove unlawful assessments on a "total revenues" basis, it is also wrong in claiming that the Court is limited to considering only the types of documents that USAC may consider in an audit. *See supra* note 2 (including nonexhaustive list of illustrative documents). Again, that is because the plain text of the rule makes clear that it applies to audits—which this Court is not performing.

In short, there is no support for the CPUC's assertion that MetroPCS can prevail only if it introduces evidence of its total revenues, the total dollar amount of any unlawful assessment, and the types of documents USAC may consider in an audit.[4]

### B.  In Any Event, MetroPCS Has Met the Burden Posited by the CPUC.

Regardless of the CPUC's misconceptions concerning the applicable burden of proof, MetroPCS has met that supposed burden. Even though not required to do so, MetroPCS has provided the total-revenues comparisons that the CPUC has demanded. *See* Barnes Decl. ¶¶ 114-120 (showing that the 2017 Resolution subjected MetroPCS to $49,154,265 in unlawful surcharges, and the 2018 Resolution subjected MetroPCS to $63,184,109 in unlawful surcharges).

Furthermore, even though not required to do so, MetroPCS has introduced precisely the types of documents contemplated by the FCC's rule for USAC audits, including "accounting records" and "other relevant documentation." 47 C.F.R. § 54.706(e). The Barnes Declaration attaches, among other things, contemporaneous documents such as customer usage reports, financial

---

[4] As discussed in more detail in MetroPCS's Opposition to Motion to Strike, this not only shows that the CPUC is insisting that MetroPCS meet a nonexistent burden on proof, but it also underscores why the CPUC's complaints about supposedly "belated" production of documents lack merit: In its initial disclosures and responses to the CPUC's discovery requests, MetroPCS had no reason to identify or produce documents that are not needed to prove its claims.

analyses by the BVC, and minutes of the BVC's meetings. *See, e.g.*, Barnes Decl., Exs. E, G, H, J, L-O, W-Z.

Only now—with nothing plausible to say in response to MetroPCS's Motion—does the CPUC urge the Court to disregard the very evidence it has (incorrectly) argued that MetroPCS must introduce. The Court should reject this disingenuous ploy, deny the CPUC's cross-motion for summary judgment, and grant MetroPCS's motion.

## II. The CPUC Has Failed to Establish Any Genuine Issue of Fact That Would Preclude Summary Judgment in MetroPCS's Favor.

The CPUC does not dispute that a revenue allocation methodology consistent with GAAP and economic principles followed by the FCC would be "reasonable" under the FCC's *Bundling Order*. *See Policy & Rules Concerning the Interstate, Interexchange Marketplace*, 16 FCC Rcd. 7418, 7448, ¶ 53 (2001). Instead, the CPUC quibbles with MetroPCS's best estimate of the standalone selling price ("SSP") of broadband data under the "building block" approach, complains MetroPCS's prior summary judgment papers did not describe in detail the "expected cost plus a margin" approach, and misconstrues the USAC and CPUC audit reports. This falls far short of the CPUC's burden to come forward with "*specific facts* showing that there is a genuine issue for trial." *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (emphasis added); *see ABC Supply Co. v. Compwest Roofing Sys., Inc.*, 2008 WL 410107, at *2 (D. Or. Feb. 11, 2008) ("Rather than provide contradictory evidence, defendants here do nothing more than deny the accuracy of plaintiff's calculations. Defendants provide no specific or direct evidence to support their denial. Consequently, defendants have failed to demonstrate the existence of a genuine issue of material fact.").

### A. The CPUC's Criticisms of the Building Block Method Lack Merit.

As described in MetroPCS's opening brief (at 9-10), MetroPCS's BVC considered several pieces of information in determining that $5 was the best estimate of the SSP of 1 GB of 4G Data. From there, based on actual usage data of subscribers to Unlimited Data plans, the BVC determined that there should be 14 building blocks of 1 GB of 4G data for each Unlimited Data plan.

Relying on its putative expert, Bert Nuehring, the CPUC first argues that it is "not logical"

7

PLAINTIFF'S REPLY BRIEF ISO MSJ AND OPPOSITION TO DEFENDANTS' MSJ
*MetroPCS California, LLC v. Reynolds*, Case No. 3:17-cv-05959-JD

that the total of the SSPs of the data elements in an Unlimited Data plan would be $75 ($14 \times \$5 +$ $5 for internet access) because that is more than the price at which MetroPCS sold several bundled plans. Cross-MSJ at 10-11, 13. However, GAAP anticipates that the sum of the SSPs of the elements in a bundle may exceed the selling price of the bundle—bundles are attractive to consumers precisely because they entail cost savings compared with buying each item (or substitutes) à la carte. GAAP then requires that discounts (*i.e.*, the difference between the sum of the SSPs of the elements of the bundle and the actual price of the bundle) be allocated pro rata to each component in a bundle, rather than a subjectively chosen subset. *See* Taub Decl., Ex. A, ¶¶ 125-128; *see also* Taub Decl., Ex. B, ¶¶ R29-R33. In Mr. Nuehring's view, the entire discount would be applied only to the data components of a bundle—but that would violate GAAP. *See id.* Thus, contrary to the CPUC's assertion, MetroPCS's methodology does not "overstate" revenues attributable to broadband data service, but rather objectively applies the relative selling price method under GAAP.[5]

Next, the CPUC argues that the $5 SSP attributed to 1 GB of data is "inflated," citing Mr. Nuehring's assertion that MetroPCS documents "consistently identify an assumption of $3.75 per GB" of SSP for data. But as explained by Mr. Barnes, the portion of the document cited by Mr. Nuehring appears in a section titled "Data Stash Valuation." Barnes Decl. ¶ 76. Data Stash was a component of postpaid (not prepaid) plans sold under the T-Mobile (not MetroPCS) brand, and allowed T-Mobile postpaid subscribers to carry over a certain amount of unused data to the next month. MetroPCS prepaid plans did not contain a similar "Data Stash" component, and the BVC did not believe the SSP of 1 GB of "Data Stash" in these T-Mobile postpaid plans was helpful to determining the SSP of 1 GB for MetroPCS prepaid plans. *Id.* ¶¶ 76-77. In contrast to Mr. Barnes, Mr. Nuehring does not know what "Data Stash" is, has no opinion on whether there are differences between what telecommunications providers can charge consumers of prepaid plans and consumers of postpaid plans, and has no view on whether the price customers would be willing to pay for 1 GB of rollover data (such as "Data Stash") and 1 GB of data in the first instance may differ. *See* Karanjia

---

[5] The CPUC's assertion that "only 1.76% of MetroPCS' customers purchased MetroPCS' highest priced plan, the $60 per month unlimited 'core plan' (GSM60) in 2017" is highly misleading. The CPUC fails to mention that the GSM60 plan was one of 10 Unlimited Data plans that sold for $60 in 2017. In fact, 12.77% of MetroPCS customers were paying $60 for plans that included unlimited data. *See* Barnes Decl., Ex. A.

8

PLAINTIFF'S REPLY BRIEF ISO MSJ AND OPPOSITION TO DEFENDANTS' MSJ
*MetroPCS California, LLC v. Reynolds*, Case No. 3:17-cv-05959-JD

Reply Decl., Ex. 1 (Nuehring Dep. Tr.) at 79:15-80:21. In other words, Mr. Nuehring has no basis on which to question the BVC's judgment. *See also* Taub Decl., Ex. B, ¶ R21.

To shore up the weaknesses in its putative expert's assertions, the CPUC relies on opinions offered by Eric Van Wambeke, a member of the CPUC staff, regarding the evidence the BVC considered in setting a $5 SSP for 1GB of data. Mr. Van Wambeke is not a CPA, he does not claim to have any familiarity with GAAP, and his criticisms miss the mark entirely. Mr. Van Wambeke opines that the $5 "top-up" charge for customers who exceed their 4G allotment in a service cycle is "not appropriate evidence for the estimated price of a recurring charge that a customer would be willing to accept." Van Wambeke Decl., ¶ 10. But Mr. Van Wambeke simply misunderstands GAAP's *standalone* selling price inquiry. If the customer were accepting a recurring charge for 1 GB of data, that transaction would not be for a "standalone" sale. In searching for objective evidence for the standalone selling price of 1 GB of data, the price that does not come with a recurring charge is the relevant price. Taub Decl., Ex. A, ¶ 120.

Mr. Van Wambeke also suggests that once MetroPCS concluded that certain evidence did not rise to the level of Vendor Specific Objective Evidence ("VSOE") or Third-Party Evidence ("TPE") of SSP, it was "contradictory" to nonetheless consider that evidence in developing a best estimate of SSP. Cross-MSJ at 12. This is absurd and contrary to GAAP. Evidence that does not rise to the level of VSOE or TPE still may be informative, and GAAP requires a company to consider all available evidence in developing a "best estimate." Taub Decl., Ex. A, ¶¶ 121-23.

Finally, the CPUC challenges the BVC's use of $5 for each of the 14 GBs of data for Unlimited Data plans, citing Mr. Nuehring's statement that "economic theory suggests that a consumer's willingness to pay diminishes with each subsequent unit provided." Cross-MSJ at 13. But as GAAP recognizes, it is well known that discounts are offered to those who buy more goods or services. Thus, a conclusion that the standalone selling price of any item is $5 is only a conclusion that one item would be sold for $5 if sold *on its own*. It does not mean that a bundle of 14 of those items would sell for $70. Taub Decl., Ex. B, ¶ R28. Again, given the discounts typically inherent in bundles, GAAP includes guidance on how to allocate those discounts. *Id.*

At bottom, the CPUC has not come forward with a shred of evidence that: (a) MetroPCS did

9

PLAINTIFF'S REPLY BRIEF ISO MSJ AND OPPOSITION TO DEFENDANTS' MSJ
*MetroPCS California, LLC v. Reynolds*, Case No. 3:17-cv-05959-JD

not comply with GAAP in implementing the building block methodology; (b) MetroPCS failed to consider relevant information in determining the best estimate of the SSP of 1 GB of 4G data; (c) the best estimate of the SSP should have been something other than $5; or (d) the average data usage by subscribers to unlimited data plans was not 14 GBs per month. The CPUC accordingly has not raised a genuine issue of material fact precluding summary judgment in MetroPCS's favor on the reasonableness of the building block methodology as a matter of law.

### B. The CPUC's Criticisms of the Cost-Plus-a-Margin Method Lack Merit.

The CPUC complains that in its previous motion for summary judgment, MetroPCS did not identify its transition to different revenue allocations under the new "cost-plus-a-margin" methodology in late 2018. Cross-MSJ at 14-15. This misstates the record. The earlier Barnes Declaration included a high-level description of MetroPCS's approaches to allocating revenues. *See* Second Barnes Decl. (Dkt. 112-24) ¶ 8. MetroPCS did not provide a more granular description because, at that point in the litigation, it had good reason to believe such a description was unnecessary for it to prevail on summary judgment. *See* Opp. to Mot. to Strike at 10. In any event, Mr. Barnes' prior declaration explicitly stated that "consistent with the new financial accounting standard on the reporting of revenue under GAAP (ASC 606), MetroPCS adjusted its revenue-allocations for several of its prepaid plans in September 2018 to reflect new marketplace data demonstrating the growing consumer demand for, and value of, broadband service" and noted that "there are two sets of plan-specific surcharge tables for 2018: one set covering the January to August 2018 period, and a second set covering the September to December 2018 period (with increased broadband allocations for various plans)." Second Barnes Decl. (Dkt. 112-24), ¶ 30. The September to December 2018 surcharge tables were attached to his declaration. *See* Second Barnes Decl., Ex. B (Dkt. 112-26). Mr. Barnes did not use the "cost plus a margin" GAAP terminology because that level of detail was not needed—especially where the CPUC had not contested the reasonableness of MetroPCS's methodology until it responded to MetroPCS's motion. *See* Opp. to Mot. to Strike at 11. The CPUC's suggestion that this somehow calls into question Mr. Barnes's "veracity" or "credibility" is yet another meritless ploy to have the Court disregard probative evidence.

The CPUC's complaint also is beside the point: During the course of the earlier summary

10

PLAINTIFF'S REPLY BRIEF ISO MSJ AND OPPOSITION TO DEFENDANTS' MSJ
*MetroPCS California, LLC v. Reynolds*, Case No. 3:17-cv-05959-JD

judgment briefing, expert discovery, and submission of the parties' joint statement of issues for trial, it became clear that the CPUC is challenging the reasonableness of the MetroPCS's allocation methodologies. Accordingly, in expert discovery and on this renewed motion, MetroPCS has included granular detail about those methodologies, and the CPUC has had a full and fair opportunity to respond, both through its putative expert's report (*see e.g.*, Karanjia Decl., Ex. 4 at 11-25) and in opposition to MetroPCS's present motion. *See Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010) ("We adopt the sound view, expressed by several of those circuits, that a successive motion for summary judgment is particularly appropriate on an expanded factual record."); *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 835 (6th Cir. 2000) ("District courts may in their discretion permit renewed or successive motions for summary judgment, particularly when the moving party has expanded the factual record on which summary judgment is sought.").

What Mr. Nuehring had to say regarding the cost-plus-a-margin method, however, highlighted the CPUC's lack of any meaningful response—perhaps because Mr. Nuehring admitted he does not have the qualifications to perform a network usage study like the one reflected in the Deloitte Study underlying the cost-plus-a-margin method. Karanjia Reply Decl., Ex. 1 at 107. The CPUC asserts that the Deloitte Study is an "improper basis" for MetroPCS's revenue allocations because Deloitte had not "audited, reviewed, or compiled any financial information provided" to it. Cross-MSJ at 15. This selective quotation is misleading—the Deloitte consultants simply made clear that they were not expressing an audit opinion or other assurance opinion, which they had not been retained to do. *See* Karanjia Reply Decl., Ex. 1 at 110-13; Barnes Decl., Ex. AA at 28. And in any event, there is no basis to believe the information provided was incomplete or unreliable.[6]

The CPUC also ignores the record evidence in an attempt to undermine the utility of the Deloitte Study. The CPUC asserts that the Deloitte Report contained only "summaries of its overall findings related to actual usage, costs, etc. for *T-Mobile*, not MetroPCS, and not by individual plan."

---

[6] The CPUC also cites Mr. Nuehring's critique that MetroPCS "did not provide the detailed workpapers and actual cost data" underlying the Deloitte Study, "including details for how the various allocations of costs and data conversions were performed." Cross-MSJ at 15. In response to Mr. Nuehring's critique, MetroPCS produced to the CPUC the data provided by T-Mobile to Deloitte in connection with the Deloitte Study. *See* Karanjia Reply Decl. ¶ 3. This sequence of events likewise hardly raises any questions regarding Mr. Barnes's veracity or credibility.

11

PLAINTIFF'S REPLY BRIEF ISO MSJ AND OPPOSITION TO DEFENDANTS' MSJ
*MetroPCS California, LLC v. Reynolds*, Case No. 3:17-cv-05959-JD

Cross-MSJ at 15. But it is undisputed that MetroPCS uses T-Mobile's network, so the cost per MB of providing voice, text, and data services is the same for T-Mobile and for MetroPCS. Barnes Decl. ¶ 80. And T-Mobile (including MetroPCS) individually tracks usage information by plan for voice, text, and data. Accordingly, the BVC was able to estimate the number of MBs of each service that would be used by MetroPCS's customers on a plan-by-plan basis, and multiply that by the cost per MB of each service, as determined by Deloitte. *Id.* ¶ 89.

Lastly, the CPUC points to a statement in the March 2018 Memo describing the building block methodology that "voice, text, and data services cannot be reduced to common units of measurement" to argue the cost-plus-a-margin approach is "invalid." Cross-MSJ at 16. As Mr. Barnes explained, prior to receiving the Deloitte Report, the BVC did not have *sufficient information or expertise* to translate voice, text, and data services into a common unit of measurement, and accordingly could not establish relative pricing under GAAP using a cost-based approach. Barnes Decl. ¶ 88. The new information from the Deloitte Study made it possible for MetroPCS to apply the cost-plus-a-margin approach with rigor and objectivity for the first time, and it was appropriate for the BVC to change its approach in light of changed circumstances—specifically, the surging consumer demand for data. Taub Decl., Ex. A, ¶¶ 80, 96-98; *see also* Barnes Decl. ¶¶ 79-80.

Again, the CPUC has not come forward with any evidence creating a genuine issue of material fact as to whether MetroPCS's cost-plus-a-margin methodology was consistent with GAAP or that the inputs used for that methodology were unreasonable.

This leaves the CPUC to return to its argument that the Court cannot determine that MetroPCS's revenue allocation methodologies were reasonable as a matter of law because MetroPCS allegedly has not provided the documents that might be required in a USAC audit. Cross-MSJ at 19-20. As explained (*supra* pp. 4-5), this is wrong and irrelevant. MetroPCS's total revenues are not necessary for the Court to understand the methodologies or determine whether they are reasonable, and MetroPCS has provided its total revenues and total revenue allocations in any event.

### C. The CPUC's Contention That It Properly Assessed Text Messaging Revenues in 2017 and 2018 Is Wrong and Irrelevant.

The CPUC insists that the Court should treat text messaging as a surchargeable service for

12

PLAINTIFF'S REPLY BRIEF ISO MSJ AND OPPOSITION TO DEFENDANTS' MSJ
*MetroPCS California, LLC v. Reynolds*, Case No. 3:17-cv-05959-JD

the period at issue here because the FCC did not issue its *Petitions for Declaratory Ruling on Regulatory Status of Wireless Messaging Service* ("*Declaratory Ruling*"), 33 FCC Rcd. 12075, 12100 n.162 (2018), stating that text messaging service is an information service (and thus not surchargeable by the CPUC), until December 2018. Cross-MSJ at 17. This overlooks that the *Declaratory Ruling* merely "clarify[ied]" existing law—it did not change it. *See* 33 FCC Rcd. at 12089, ¶ 9. As a result, text messaging is properly viewed as a nonsurchargeable service throughout the period relevant here. Indeed, the Ninth Circuit in this case understood, based on the *Declaratory Ruling*, that "neither the FCC nor the CPUC consider text messaging revenues to be surchargeable." *MetroPCS*, 970 F.3d at 1111 n.2. Regardless, even setting aside the CPUC's improper assessments on text messaging service, it is clear the contested Resolutions are preempted because they impermissibly impose surcharges on MetroPCS's revenues from nonsurchargeable mobile broadband service. *See* MetroPCS MSJ at 19-22; Barnes Decl. ¶¶ 94-102.

### D. The CPUC's Efforts to Rewrite the Prior Audits Are Unavailing.

As MetroPCS showed, in 2015, USAC conducted audits of MetroPCS affiliates that used the same building block allocation methodology that MetroPCS used during the January 2017 to August 2018 period. *See* MetroPCS MSJ at 17-18; Barnes Decl. ¶ 64 & Exs. P, Q. Far from raising any questions or concerns about that methodology, USAC—relying on an independent auditor's analysis—"evaluated the accuracy and completeness of the revenues and other information reported by" each affiliate and signed off on its auditor's conclusion that the affiliates had reported total revenues at the correct amounts. Barnes Decl. ¶ 65, Ex. P at 10, 8, Ex. Q at 10.

The CPUC urges the Court to ignore these audits because they were "performance audits" rather than "financial audits." Cross-MSJ at 20. That is beside the point. The audit reports stated that their purpose was "to determine whether the Filer[s] complied with the Rules." Barnes Decl., Ex. P at 8, Ex. Q at 8. The reports specifically noted that the auditors "evaluated the accuracy and completeness of the revenues and other information reported by [each] Filer on its 2015 FCC Form 499-A" to (among other things) "determine whether the Filer was compliant with the Rules as they relate to [Universal Service Fund] recovery charges on customer invoices." *Id.* Based on that evaluation, and except for *de minimis* changes affecting less than 0.0044% of reported revenues, the

13

auditor and USAC found that the MetroPCS affiliates had each "use[d] a good-faith estimate to allocate revenue from the bundle to the applicable lines on the FCC Form 499-A" and "the total revenues from these plans were reported at the correct amounts." *Id.*, Ex. P at 10, Ex. Q at 10.

The CPUC asserts that the USAC audit reports "did not address unbundling of pre-paid telephone services into voice, text, and data components." Cross-MSJ at 21. Not so. To "evaluate[] the accuracy and completeness of the revenues and other information reported by the Filer on its 2015 FCC Form 499-A," USAC and its auditor necessarily examined the MetroPCS affiliates' methodology for allocating revenues between telecommunications services subject to federal USF fees and broadband and other services that are not subject to such fees. That is because the FCC Form requires carriers to separately identify (i) revenue from data and other "information services" not subject to USF fees (reported on Line 418) and (ii) revenue from telecommunications services that are subject to USF fees (reported on Lines 409 and 410).[7] Indeed, Mr. Barnes confirms that USAC's auditor specifically focused on MetroPCS's allocation methodology and that Mr. Barnes sent the auditor a document he authored describing the methodology. Barnes Decl. ¶ 69 & Ex. R.

In short, the USAC audits confirm that the building block methodology (the same methodology used by the MetroPCS affiliates and by MetroPCS between January 2017 and August 2018 here) comported with FCC rules, including the *Bundling Order*.[8]

**E.  The CPUC's Intrastate Factors Are Not Reasonable or Entitled to Deference.**

As MetroPCS explained in its opening brief (at 18-19), the CPUC's intrastate factor is fundamentally flawed: It violates economic principles (and common sense) by, among other things, allocating more revenue to *voice* service when the amount of *data* service goes up, but the amount of voice service stays the same. And the CPUC misconstrued carriers' revenue reporting on FCC forms in coming up with its figures. The CPUC does not even attempt to dispute either of these

---

[7] *See* 2017 FCC Form 499-A, https://docs.fcc.gov/public/attachments/DA-17-161A2.pdf.

[8] The CPUC also attempts to downplay its own auditors' findings that, for calendar year 2017, "MetroPCS [was] compliant with the prepaid MTS surcharge requirements" in all relevant respects. Barnes Decl., Ex. V at 12-13. The CPUC stresses that its auditors' report "did not discuss MetroPCS' bundle allocation methodology or its compliance with FCC requirements governing bundling allocation." Cross-MSJ at 21. But that is beside the point, because the CPUC does not dispute that its auditors inquired about and were provided with a description of the building block methodology. *See* Barnes Decl. ¶ 72 & Ex. U.

14

points. Instead, it argues that this Court should defer to the CPUC's interpretation of the laws it is charged with implementing. That is a red herring: This case is not about the proper interpretation of the Prepaid Collection Act. *Cf. Clallam County v. Dep't of Transp.*, 849 F.2d 424, 429 (9th Cir. 1988) (cited in Cross-MSJ at 22) (deferring to agency interpretation of the phrase "costs of construction"). Nor is the Court reviewing the reasonableness of agency action under the Administrative Procedures Act. Again, this is a preemption case about whether the CPUC impermissibly imposed surcharges on MetroPCS's nonsurchargeable revenue. The obvious flaws in the CPUC's intrastate factors only underscore that they could not possibly have accurately captured only MetroPCS's surchargeable revenue. And that is further confirmed by the undisputed fact that consumer demand for data services (which the CPUC agrees are nonsuchargeable) was surging during the relevant period—a trend that continues today. *See* MetroPCS MSJ at 14-15.

\* \* \*

The CPUC has raised no genuine question of material fact as to whether MetroPCS's allocation methodologies were reasonable. Indeed, it does not dispute that, as a matter of statutory construction, "reasonable" methodologies under the *Bundling Order* refers to methodologies that are "fair, proper, or moderate under the circumstances," Black's Law Dictionary (10th ed. 2015), or "hav[e] a basis in fact or evidence" and are "not arbitrary and capricious or purely speculative," Webster's Legal Dictionary (1st ed. 1996). MetroPCS's methodologies comported not only with GAAP but also with the economic principles the FCC has applied in analogous circumstances. Because that is so—and because the CPUC does not otherwise dispute the plan-by-plan calculations MetroPCS included and the total revenues figures showing that the Resolutions imposed surcharges on broadband and other nonsurchargeable revenue—the Resolutions are preempted.

## CONCLUSION

The Court should grant summary judgment in MetroPCS's favor, declare that the contested Resolutions are preempted and unlawful, and permanently enjoin enforcement of those Resolutions against MetroPCS. The Court should deny the CPUC's Cross-Motion for Summary Judgment.

//

//

15

PLAINTIFF'S REPLY BRIEF ISO MSJ AND OPPOSITION TO DEFENDANTS' MSJ
*MetroPCS California, LLC v. Reynolds*, Case No. 3:17-cv-05959-JD

DATED this 18th day of April, 2023.

                              Respectfully submitted,

                              DLA PIPER LLP (US)

                              By:   /s/ *Peter Karanjia*
                                     Peter Karanjia

                              Attorneys for Plaintiff MetroPCS California, LLC

16

PLAINTIFF'S REPLY BRIEF ISO MSJ AND OPPOSITION TO DEFENDANTS' MSJ
*MetroPCS California, LLC v. Reynolds*, Case No. 3:17-cv-05959-JD