Peter Karanjia (admitted *pro hac vice*)
DLA PIPER LLP (US)
500 8th Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4135
Email: peter.karanjia@dlapiper.com

Melanie Walker (CA State Bar No. 336994)
DLA PIPER LLP (US)
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067
Telephone: (312) 368-4000
Email: melanie.walker@us.dlapiper.com

Martin L. Fineman (CA State Bar No. 104413)
Geoffrey S. Brounell (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
50 California Street, Suite 2300
San Francisco, California 94111
Telephone: (415) 276-6500
Email: martinfineman@dwt.com
geoffreybrounell@dwt.com

Attorneys for Plaintiff
MetroPCS California, LLC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| METROPCS CALIFORNIA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ALICE B. REYNOLDS, President of the California Public Utilities Commission, in her official capacity; KAREN DOUGLAS, Commissioner of the California Public Utilities Commission, in her official capacity; DARCIE L. HOUCK, Commissioner of the California Public Utilities Commission, in her official capacity; JOHN REYNOLDS, Commissioner of the California Public Utilities Commission, in his official capacity; and GENEVIEVE SHIROMA, Commissioner of the California Public Utilities Commission, in her official capacity, <br><br> Defendants. | Case No. 3:17-cv-05959-JD <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE** <br><br> Date: April 27, 2023 <br> Time: 10:00 a.m. <br> Place: Courtroom 11, 19th Floor <br><br> Before the Honorable James Donato <br><br> Complaint Filed: Oct. 17, 2017 <br> Second Am. Complaint Filed: Jan. 19, 2018 <br> Reserved Trial Date: May 30, 2023 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................... 1

PROCEDURAL BACKGROUND .............................................................................................. 1

LEGAL STANDARD .................................................................................................................. 4

ARGUMENT ................................................................................................................................ 5

I.     The CPUC Articulates No Basis for Striking MetroPCS's Fact and Expert Witness Declarations and Expert Reports ........................................................................................ 5

II.    MetroPCS's Documentary Evidence Should Not Be Stricken Under Rule 37(c) ................ 6

    A.     MetroPCS Fully Complied with Its Disclosure Obligations Under Rule 26 ............ 6

    B.     There Was No Prejudice or Bad Faith ....................................................................... 8

    C.     Even If the CPUC's Baseless Claims Had Merit, Striking Evidence Is Unwarranted and the Court Should Order an Alternative Remedy .......................... 13

CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Teck Cominco Alaska, Inc.*,
   231 F.R.D. 580 (D. Alaska 2005) ............................................................................................. 7

*Cabrera v. Google LLC*,
   842 F. App'x 38 (9th Cir. 2021) ............................................................................................ 4, 7

*Hoffman v. Tonnemacher*,
   593 F.3d 908 (9th Cir. 2010) ..................................................................................................... 9

*Liberty Ins. Corp. v. Brodeur*,
   41 F.4th 1185 (9th Cir. 2022) ................................................................................................ 5, 8

*R&R Sails, Inc. v. Ins. Co. of Pa.*,
   673 F.3d 1240 (9th Cir. 2012) ............................................................................................... 5, 8

*Silvagni v. Wal-Mart Stores, Inc.*,
   320 F.R.D. 237 (D. Nev. 2017) .................................................................................................. 4

*Skillsky v. Lucky Stores, Inc.*,
   893 F.2d 1088 (9th Cir. 1990) ................................................................................................... 5

*Switch Commc'ns Grp. v. Ballard*,
   2011 WL 3957434 (D. Nev. Sept. 7, 2011) ............................................................................... 7

*Symbion Rsch. Int'l, Inc. v. Lewis*,
   2007 WL 9734211 (D. Nev. Dec. 21, 2007) ............................................................................. 8

*Willis v. Koning & Assocs.*,
   2023 WL 2541327 (N.D. Cal. Mar. 15, 2023) ......................................................................... 12

**Rules**

Fed. R. Civ. P. 26(a) ........................................................................................... 4, 5, 6, 7, 11, 13

Fed. R. Civ. P. 26(e) .................................................................................................................. 4, 6

Fed. R. Civ. P. 34 ........................................................................................................................ 7, 8

Fed. R. Civ. P. 37(a) ................................................................................................................... 7, 8

Fed. R. Civ. P. 37(c) ....................................................................................................... 4, 5, 6, 7, 8, 12

Fed. R. Civ. P. 56(c) ................................................................................................................. 5, 12

Fed. R. Civ. P. 56(d) ..................................................................................................................... 13

Fed. R. Civ. P. 56(e) ................................................................................................................ 13

N.D. Cal. Civ. R. 7-3(d) ........................................................................................................... 5

iii
PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE
*MetroPCS California, LLC v. Reynolds*, Case No. 3:17-cv-05959-JD

# INTRODUCTION

The CPUC has no basis to oppose MetroPCS's renewed motion for summary judgment on the merits, so it tries a different tack: it asks the Court to strike *all* of MetroPCS's evidence—including numerous documents that MetroPCS produced *years ago*.[1] This is pure gamesmanship. The CPUC invokes no rule permitting the striking of MetroPCS's timely filed fact and expert witness declarations, and it does not object to their admissibility. The contrived challenge to MetroPCS's documentary evidence fares no better. As the CPUC itself concedes, the vast majority of the documents the CPUC now seeks to strike were produced to the CPUC well over a year ago (and some were produced as far back as 2018). With respect to those documents, as well as four others that were produced more recently, the CPUC *fails to show any prejudice*.

The CPUC's request that the Court ignore all of MetroPCS's evidence is as legally unsound as it is unfair. In opposing MetroPCS's earlier motion for summary judgment, and again in its putative expert's report and statement of issues for trial, the CPUC manufactured nonexistent evidentiary burdens that MetroPCS must purportedly meet to prevail on its as-applied preemption claims. Despite disagreeing with the CPUC's view of how it must prove its claims, MetroPCS provided the evidence the CPUC requested. Now the CPUC argues that the Court *cannot consider* the very evidence the CPUC repeatedly insisted MetroPCS provide. The CPUC's "heads I win, tails you lose" approach should be seen for what it is: a desperate attempt to avoid summary judgment. The Court should deny the CPUC's motion to strike in its entirety.

# PROCEDURAL BACKGROUND

MetroPCS filed this action on October 17, 2017, advancing a facial and as-applied preemption challenge to CPUC resolutions (the "Resolutions") imposing a new methodology for calculating Universal Service surcharges on prepaid carriers' revenues. Dkt. 1 (Complaint). In the months that followed, MetroPCS amended its pleadings to reflect additional developments, Dkt. 32 (First Amended Complaint); Dkt. 49 (Second Amended Complaint), and the parties simultaneously engaged in an initial round of disclosures and discovery. Specifically, on December 20, 2017,

---

[1] Capitalized or abbreviated terms have the same meaning as in Plaintiffs' motion for summary judgment and accompanying papers.

MetroPCS timely served initial disclosures listing, among several categories of documents supporting its claims: "1. MetroPCS's relevant policies and methodology for allocating revenue for its prepaid wireless service plans"; "2. [d]escription of generally accepted accounting principles ["GAAP"] for revenue recognition"; "4. MetroPCS's traffic analysis reports (or studies) underlying the allocation of revenue for its prepaid wireless service plans"; and "7. MetroPCS's submissions to the CPUC in response to the CPUC's data requests concerning . . . MetroPCS's assessment of surcharges on its prepaid wireless service." Karanjia Decl. ¶ 2 & Ex. 1. On January 19, 2018, the CPUC served discovery requests seeking, among other things, documents listed under the initial disclosures' first, second, and fourth categories. Dkt. 204-2. Notably, the CPUC did *not* ask MetroPCS to re-produce information it had previously provided to the CPUC in response to data requests, including voluminous financial data produced to the CPUC's auditors covering MetroPCS's revenues and surcharge remittances. In response, MetroPCS made several productions to the CPUC in February and March 2018, providing numerous documents relating to the requested categories, including the MetroPCS Bundle Valuation Committee's March 2018 Memo and "traffic studies." *See* Karanjia Decl. ¶ 4; Dkt. 204-1 (Gallardo Decl.) ¶ 9 (acknowledging productions).

The parties proceeded to a first round of cross-motions for summary judgment, Dkt. 63, 73, which focused on MetroPCS's *facial* preemption challenge and purely legal issues (rather than any factual or evidentiary issues).[2] This Court (per Judge Illston) granted summary judgment to MetroPCS on its facial preemption challenge in November 2018, Dkt. 88, but the Ninth Circuit reversed that holding and remanded for further proceedings on MetroPCS's *as-applied* preemption challenge in August 2020. *MetroPCS California, LLC v. Picker*, 970 F.3d 1106, 1110, 1126 (9th Cir. 2020). In so doing, the Ninth Circuit noted that MetroPCS's as-applied preemption challenge involved a "largely factual inquiry that is best left to the district court." *Id.* at 1126.

Again, the parties cross-moved for summary judgment in November 2020 and February 2021. Dkt. 112, 123. For the first time, the CPUC argued that MetroPCS's as-applied preemption

---

[2] The central question in that initial phase of the litigation was whether the CPUC's "intrastate factor" under the contested CPUC Resolutions conflicted with FCC precedents granting carriers flexibility in how they apportion their revenues. *See* Dkt. 63 at 22-29.

challenge required that MetroPCS show its "actual revenue data." Dkt. 123 at 23.[3] MetroPCS explained why the CPUC misunderstood the law in asserting this nonexistent burden. Dkt. 150 at 4-6 & n.7; *see also* Dkt. 206 (accompanying combined reply and opposition of MetroPCS on current cross-motions for summary judgment) at 4-6 (explaining CPUC's misunderstanding of MetroPCS's burden to establish as-applied preemption). In September 2021, the Court (per Judge Illston) denied summary judgment to both parties on the as-applied challenge, noting that, despite "the voluminous evidence in the record," it could not determine as a matter of law "whether MetroPCS's revenue allocation methodology is reasonable." Dkt. 152 at 8-9.

The parties then jointly proposed a schedule for expert discovery with an April 2022 cutoff, Dkt. 155, which the Court adopted, Dkt. 156. From January to April 2022, the parties engaged in expert discovery, exchanging expert reports, conducting expert depositions, and making supplemental productions of documents relied on by their respective experts. Karanjia Decl. ¶ 5.[4]

In September 2022, the parties filed a joint statement of issues for trial. Dkt. 185. The CPUC took the position that "MetroPCS must document the actual dollar amount of alleged impermissible assessment," *id.* at 4, and stated that "the key factual issue" for trial was "[w]hether MetroPCS can show, using competent evidence of actual revenue figures, that the challenged CPUC Resolutions impermissibly double-assessed MetroPCS's surchargeable revenues, or impermissibly assessed a surcharge on non-surchargeable revenue," *id.* at 7. MetroPCS again contested this framing of its evidentiary burden, explaining that it could establish its as-applied preemption claim "based on MetroPCS's revenue allocations for its prepaid wireless plans compared to the CPUC's intrastate factors." *Id.* at 6-7.

At the March 2, 2023 case management conference, the Court (per Judge Donato) questioned whether the dispute raises a triable issue of fact and offered the parties the following choice: the parties could ask the Court either to "take a second look at what [they] did earlier" or "re-file" motions for summary judgment in "short order." Tr. at 23:2-6. The parties chose not to rely on their prior summary judgment motions but rather to file new cross-motions for summary judgment. Dkt.

---

[3] Pinpoint citations to documents filed on the docket are to the documents' internal pagination.

[4] Plaintiff made four productions of documents from January to April 2022.

3

196. On March 21, 2023, MetroPCS timely filed its motion supported by the declarations of its main fact witness, its two expert witnesses, and other evidence that it otherwise would present at trial.

The CPUC now seeks to strike *all of MetroPCS's evidence*—not just documents but also supporting declarations—erroneously arguing that some subset of this evidence was purportedly not "timely disclosed." Dkt. 204 at 8; *see* Dkt. 204-3. As explained below, the CPUC does not identify any prejudice from MetroPCS's introduction of any documents—documents the CPUC itself insisted that MetroPCS must introduce to meet a nonexistent burden of proof that the CPUC invented. Indeed, as the CPUC admits, almost all of the documents were produced to the CPUC *well over a year ago* (or more). *See* Dkt. 204-1 ¶ 9.

## LEGAL STANDARD

Early in a case, a party must make initial disclosures of "a copy—or a description by category and location—of all documents" that the party "has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii), (C); *see also* Fed. R. Civ. P. 26(e) (supplemental disclosures). "A major purpose" of the initial disclosure requirements "is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendments. The requirements "should not be viewed as procedural weapons through which parties seek to gain a tactical litigation advantage," especially in light of courts' "strong preference for deciding cases on the merits whenever reasonably possible." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 243 (D. Nev. 2017) (citing *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)). Further, the disclosure rules do not require a party "to anticipate [an adversary's] defenses and produce evidence to defeat defenses that [the adversary] had not yet asserted." *Cabrera v. Google LLC*, 842 F. App'x 38, 40 (9th Cir. 2021).

If the obligation to disclose is violated, the document may not be used "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Courts use "[s]everal factors to guide the determination of whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the

likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (quoted source omitted). Moreover, because excluding evidence is a "harsh" sanction, particularly where, "in practical terms, the sanction amount[s] to dismissal of a claim," courts conducting the harmlessness inquiry under Rule 37(c)(1) must consider (1) "whether the claimed noncompliance involved willfulness, fault, or bad faith" and (2) "the availability of lesser sanctions." *R&R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012).

## ARGUMENT

### I. The CPUC Articulates No Basis for Striking MetroPCS's Fact and Expert Witness Declarations and Expert Reports

The CPUC asks the Court to strike "all of the declarations and attachments that MetroPCS included in its March 21, 2023 Motion for Summary Judgment" pursuant to Federal Rule of Civil Procedure 37(c)(1) as a remedy for a purported violation of Rule 26(a)(1)(A)(ii).[5] Dkt. 204 (Notice of Motion); *see id.* at 1. By its plain terms, however, Rule 26(a)(1)(A)(ii) applies only to initial disclosures concerning documentary evidence, not to declarations submitted in support of a motion; and the CPUC does not argue that MetroPCS failed to timely disclose its fact and expert witnesses under Rule 26(a)(1)(A)(ii) and (2).

Nor did the CPUC object to the admissibility of the declarations under Rule 56(c)(2). *See* Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment ("Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. . . . There is no need to make a separate motion to strike."). Given the CPUC's failure to object to admissibility, the declarations are properly part of the summary judgment record. *See Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1094 (9th Cir. 1990) (citing

/////

---

[5] Invoking Local Civil Rule 7-3(d), the CPUC also appears to contend that the expert declarations and accompanying reports, as well as the Chill Declaration, should be excluded on the ground that they were not timely filed. Dkt. 204 at 6-8. This argument is baseless. MetroPCS produced its expert reports to the CPUC within the applicable deadlines, *see* Dkt. 169, 201-3, 201-4, and likewise timely filed its current motion for summary judgment together with all supporting papers by the court-prescribed due date, *see* Dkt. 198, 201, 201-1 to -6.

5

precedent for proposition that "failure to object to allegedly defective evidence waives the objection for purposes of summary judgment").

Simply put, there is no basis for excluding the declarations that MetroPCS timely filed in support of its motion for summary judgment. That the CPUC asks the Court to exclude the entirety of Mr. Barnes' declaration—as well as the reports of MetroPCS's testifying experts—merely confirms that the CPUC is both overreaching and unable to withstand summary judgment.

## II. MetroPCS's Documentary Evidence Should Not Be Stricken Under Rule 37(c)

### A. MetroPCS Fully Complied with Its Disclosure Obligations Under Rule 26

MetroPCS fully complied with its disclosure obligations under Rule 26(a) and (e), and it went above and beyond those obligations by producing to the CPUC documents that are not needed to establish its claims (for example, evidence of total revenues and granular financial documents of the type considered by the FCC's Universal Service Fund administrator, USAC) but that the CPUC deems necessary. The Court should reject the CPUC's disingenuous attempt to ambush MetroPCS by insisting that MetroPCS meet a nonexistent evidentiary burden and then, in response to MetroPCS's well-supported summary judgment motion, seeking to exclude the very documents—most of which MetroPCS produced to the CPUC well over a year ago—that the CPUC demanded.

MetroPCS asserts that the CPUC's Resolutions are preempted because the Resolutions (1) imposed surcharges on MetroPCS's mobile broadband data and other nonsurchargeable services in violation of federal law, and (2) subjected MetroPCS to a substantially higher surcharge than similarly situated postpaid carriers were required to pay. Dkt. 201 at 13-25. To prove these claims, MetroPCS must show that its revenue allocation methodology is reasonable under the FCC's "*Bundling Order*," *see id.* at 15-16, and compare the portion of its revenues attributable to surchargeable intrastate voice service under its methodology to the portion of revenues assessed under the Resolutions. Precedent makes clear that MetroPCS can meet this burden by focusing on its revenue allocations for its individual wireless plans (i.e., the percentages of revenues for each plan assigned to Data, Text, and intrastate Voice service) and comparing those percentages with the CPUC's intrastate factor percentages. *See* Dkt. 206 at 4-6.

/////

6

PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE
*MetroPCS California, LLC v. Reynolds*, Case No. 3:17-cv-05959-JD

Consistent with this evidentiary burden, MetroPCS's initial disclosures informed the CPUC that it intended to rely on its "relevant policies and methodology for allocating revenue for its prepaid wireless service plans," GAAP rules for revenue recognition, "traffic analysis reports (or studies) underlying the allocation of revenue for its prepaid wireless service plans," and documents provided "in response to the CPUC's data requests concerning . . . MetroPCS's assessment of surcharges on its prepaid wireless service" (which includes financial and revenue data requested by CPUC auditors). These disclosures fully satisfied MetroPCS's Rule 26(a) obligations.

The CPUC does not dispute that, in 2017, MetroPCS timely disclosed the categories of relevant documents on which MetroPCS intended to rely. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii) (covering either documents "or a description" of those documents). Nor does the CPUC contest that, in 2018, MetroPCS timely produced the documents the CPUC requested—i.e., documents describing MetroPCS's revenue allocation methodology in effect at the time, GAAP rules for revenue recognition, and traffic studies in response to the CPUC's discovery requests. Thus, the present case is nothing like *Adams v. Teck Cominco Alaska, Inc.*, 231 F.R.D. 580-81 (D. Alaska 2005), where a party admittedly failed to disclose a letter and fact sheet it intended to rely on in support of its defense.

Still, the CPUC faults MetroPCS for not producing in 2018 every single document that the CPUC *later* argued was necessary to prove as-applied preemption under a flawed and newly minted evidentiary theory. But in making initial disclosures, a party is not required to anticipate a defense theory that its adversary will cobble together years into the litigation. *Cabrera*, 842 F. App'x at 40. And it makes no sense that MetroPCS can be penalized for not only meeting—but exceeding—its disclosure obligations by producing exactly the type of documents that the CPUC demands, even though such documents are not necessary to prove MetroPCS's as-applied preemption claims.

Moreover, Rule 37(c)(1) only provides a remedy for a failure to ***disclose*** under Rule 26(a) or (e)—not a remedy for failure to ***produce*** documents under Rule 34 or Rule 37(a). *See Switch Commc'ns Grp. v. Ballard*, 2011 WL 3957434, at *10 (D. Nev. Sept. 7, 2011) ("Rule 26(a)(1)(A)(ii) . . . does not require a party to produce relevant documents that it does not intend to use in support of its claims or defenses. The proper method for obtaining relevant documents is a request for

7

PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE
*MetroPCS California, LLC v. Reynolds*, Case No. 3:17-cv-05959-JD

production pursuant to Rule 34 and, if necessary, a motion to compel responses to requests for production." (citations omitted)). The CPUC has not made a motion under Rules 34 and 37(a) and, even if it had, the motion would be meritless. The CPUC "knew of the existence of the documents" it belatedly asserted were relevant "but did not bring a motion to compel their disclosure." *Symbion Rsch. Int'l, Inc. v. Lewis*, 2007 WL 9734211, at *18 (D. Nev. Dec. 21, 2007). At most, the CPUC should have alerted MetroPCS to this issue and attempted to resolve it earlier, and there is no basis for "striking the Exhibits now or precluding their use at trial." *Id.*

MetroPCS complied with its discovery obligations and the CPUC's ploy to strike the entirety of MetroPCS's evidence supporting its motion for summary judgment should be rejected.

### B. There Was No Prejudice or Bad Faith

Even if the CPUC had identified a disclosure violation (it has not), evidence exclusion would not be justified in this case because any deficiency in MetroPCS's disclosures was "harmless." Fed. R. Civ. P. 37(c). After litigating this case and actively engaging in fact and expert discovery for more than five years, the CPUC makes no effort to show (and cannot show) that it was prejudiced in any way by MetroPCS's submission of the types of evidence that the CPUC has demanded under its flawed understanding of MetroPCS's evidentiary burden. That is especially so because, by the CPUC's own account, almost all documents were produced to the CPUC well over a year ago and others were produced as early as 2018. *See* Dkt. 204-1 ¶ 9. ***The CPUC's putative expert specifically stated that he considered most of these documents in forming his opinions***. *See, e.g.*, Dkt. 201-2, Ex. 4 (Nuehring Report), App. B. *See Liberty*, 41 F.4th at 1192. Nor can the CPUC show that MetroPCS acted with "willfulness, fault, or bad faith," when MetroPCS has pursued the same as-applied preemption theory throughout the litigation. *R&R Sails*, 673 F.3d at 1247. As detailed in the exhibit-by-exhibit analysis below, the exhibits that the CPUC now seeks to bar the Court from considering are the very documents that the CPUC belatedly said it needed and that MetroPCS produced to the CPUC and submits to the Court to obviate further disputes about the CPUC's flawed framing of MetroPCS's evidentiary burden.[6]

---

[6] MetroPCS addresses the CPUC's request to strike the witness declarations in Section I *supra*.

8

### 1. Barnes Declaration Exhibits

None of the 29 documents attached to the Barnes Declaration should be stricken. *See* Dkt. 201-1 (Barnes Decl. & Exhibits).

Eight of these exhibits (**Exhibits A, B, C, D, U, V, BB, and CC**), including the BVC's March 2018 Memo (Exhibit D) and the BVC charter appended to that document (Exhibit C), were filed in support of MetroPCS's first motion for summary judgment on April 6, 2018 or second motion for summary judgment on November 24, 2020. Karanjia Decl. ¶ 7; *see* Dkt. 63-40, 112-23, 112-25 to -29. The CPUC has not articulated any grounds for striking any of these eight exhibits, which the CPUC has had in its possession for years.

Another 17 exhibits (**Exhibits E, F, G, H, L, M, N, O, P, Q, R, S, W, X, Y, Z, and AA**) were produced to the CPUC during expert discovery in January and March 2022—i.e., well over a year ago.[7] Karanjia Decl. ¶ 7. The CPUC does not argue that the documents were produced after the April 22, 2022 expert discovery cutoff date. *See* Dkt. 169. Nor does (or could) the CPUC argue that it was surprised that MetroPCS would rely on these documents in its current motion for summary judgment or case-in-chief at trial—the documents were produced in conjunction with the expert reports prepared by MetroPCS's testifying experts. Thus, the CPUC knew (or should have known) that MetroPCS could or would rely on the documents. The CPUC made no objection and expressed no concerns at the time, nor did it complain about any supposedly "belated" production at the last two case management conferences before this Court (in May 2022 and March 2023, respectively).

The CPUC now argues that these exhibits should be stricken because they were not filed in support of MetroPCS's *last* motion for summary judgment. *See* Dkt. 204 at 2-3. This contention is fundamentally flawed, for multiple reasons. *First*, a party may (and is expected to) submit different evidence in successive motions for summary judgment. Indeed, "a successive motion for summary judgment is particularly appropriate on an expanded factual record." *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010). Furthermore, at the last case management conference, this Court acknowledged that parties may file successive motions and authorized the parties to file *new* motions

---

[7] The CPUC asserts that Exhibit R has "not previously been disclosed to the CPUC." Dkt. 204 at 5-6. Not so. It was produced in March 2022—more than a year ago. Karanjia Decl. ¶ 7.

for summary judgment here. Karanjia Decl. ¶ 8 & Ex. 2 (Transcript of March 2, 2023 CMC) at 20:3-6; *see also* Dkt. 190.[8]

*Second*, MetroPCS is aware of no authority—and the CPUC points to none—that a party's decision not to ***file*** documents with the Court in support of a motion forecloses a party from using those documents in support of a later motion. MetroPCS had no reason to file these 17 exhibits in support of its second motion for summary judgment because, until then, the CPUC had not challenged the validity or reasonableness of MetroPCS's methodology and had not articulated a theory of as-applied preemption based on "total revenues" data and financial documents that USAC would consider in an audit of federal Universal Service Fund contributions. To the contrary, the CPUC's 2019 audit report investigated MetroPCS's allocation approach and concluded that it complied with regulatory requirements. Dkt. 201-1, Ex. V at 12-13. In ruling on the second summary judgment motions, the Court advised that appointment of a Special Master "would assist the Court in determining whether MetroPCS's revenue allocation methodology is reasonable . . . and relatedly whether the CPUC's Resolutions impermissibly assess broadband data or other non-intrastate revenue." Dkt. 152 at 9. Thereafter, the Court instructed each party to "retain its own expert who would both advise the Court." Dkt. 161. The CPUC advances no authority for the proposition that court-instructed expert discovery was "improperly disclosed" and cannot be used on summary judgment. Dkt. 204 at 3.

*Third*, until the March 2023 case management conference, the parties understood that they would proceed to trial, as reflected by case management statements and minutes. *See, e.g.*, Dkt. 166, 178, 180, 185. The CPUC repeatedly stipulated to that approach and expressed no concerns about

---

[8] The CPUC mischaracterizes this Court's statements at the case management conference by incorrectly suggesting that the Court did not authorize new motions for summary judgment. *See* Dkt. 204 at 10. Although the Court initially indicated a preference for considering the parties' previously filed motions for summary judgment, Karanjia Decl., Ex. 2 at 17:1-13, the CPUC neglects to acknowledge that the Court ultimately authorized both sides to file *new* motions, *see id.* at 23:3-6 ("I want either to go take a second look at what we did earlier *or we would like to re-file*. . . . *If you choose to re-file*, it would be very short order . . . ." (emphasis added)); *see also* Dkt. 190 (directing parties to meet and confer and propose "a plan for summary judgment"). The parties clearly understood that the Court allowed the filing of new motions, given that they requested additional time to file and an expansion of page limits (rather than simply refiling the prior papers). *See* Dkt. 196 at 2. If the Court had instead limited the parties to their prior motions, there would have been no need to file any new papers or expand page limits.

10

documents produced with MetroPCS's expert reports. At a bench trial, MetroPCS could introduce much of the same testimonial and documentary evidence as contained in the declarations and attached exhibits, consistent with pretrial disclosures made at least 30 days before trial. *See* Fed. R. Civ. P. 26(a)(3)(B). It would be completely illogical if (as the CPUC suggests) this Court were barred from considering on summary judgment the same factual record that it could consider at trial.

The CPUC next contends that documents relating to the "expected cost plus a margin" methodology applicable from September 2018 to December 2018 should have been disclosed in earlier rounds of summary judgment motions. Dkt. 204 at 2-3. But the "expected cost plus a margin" methodology was not at issue in the first round of summary judgment for the simple reason that it occurred after the briefing on that motion (filed in *April* 2018). And contrary to the CPUC's unfounded characterization, MetroPCS did not "conceal[]" anything about the methodology in the second round of summary judgment. *Id.* at 7. Mr. Barnes described the change in methodology in his second declaration in support of the second motion for summary judgment. *See* Dkt. 112-24 ("[C]onsistent with the new financial accounting standard on the reporting of revenue under GAAP (ASC 606), MetroPCS adjusted its revenue-allocations for several of its prepaid plans in September 2018 to reflect new marketplace data demonstrating the growing consumer demand for, and value of, broadband service."). And, then as now, he provided separate "Surcharge Tables" covering the distinct periods in 2018 (January to August and September to December). *Compare* Dkt. 112-26 (Exhibit B to Second Barnes Declaration in Support of Second MSJ), *with* Dkt. 201-1, Ex. CC. At most, the CPUC's complaint is that Mr. Barnes' prior declaration did not describe the technical minutia of the methodology using GAAP terminology ("cost-plus-a-margin"). MetroPCS had no reason to believe a more elaborate description was required because, up to that point in the litigation, the CPUC had not challenged the factual underpinnings of the methodology.

After the CPUC made clear that it was contesting the reasonableness of MetroPCS's revenue allocation methodologies, and the Court denied summary judgment in September 2021, the parties engaged in expert discovery. MetroPCS's expert, Scott Taub, discussed the cost-plus-a-margin methodology at length, and MetroPCS supplemented its productions with the documents Mr. Taub relied on, which included documents concerning that methodology. The CPUC cannot credibly

11

argue that it was prejudiced by the timing of this supplemental production, which took place *more than a year ago*—especially given that the CPUC's putative expert had the opportunity to (and did) address the cost-plus-a-margin methodology in his report. *See* Dkt. 201-2, Ex. 4 ¶¶ 45-53.

The CPUC also maintains that the USAC audit reports (Barnes Declaration, Exhibits P and Q) should be excluded because the CPUC previously objected to the admission of quotations from those reports on "best evidence" grounds. Dkt. 204 at 4. But that objection was not ruled on, and MetroPCS produced the full reports to the CPUC *more than a year ago*, and attached the full reports to its current motion for summary judgment. The inescapable conclusion is that the CPUC has no persuasive response to the evidence on the merits, so it first faulted MetroPCS for *not* including the full audit reports with its last motion for summary judgment and now faults MetroPCS for including the reports with its current motion. The Court should reject the CPUC's shifting and self-contradictory positions.[9]

The remaining four exhibits (**Exhibits I, J, K, and T**) were produced on March 21, 2023, before MetroPCS filed for summary judgment. Karanjia Decl. ¶ 7. Exhibits I, J, and K substantiate and provide corroboration for Mr. Barnes' sworn statements about the 14 GB average monthly usage of 4G broadband data by customers with Unlimited Data plans as one of several inputs that the BVC considered when determining a Standalone Selling Price for the 4G data component of its Unlimited Data plans under the January 2017-August 2018 building block allocation methodology. *See* Dkt. 201-1, ¶¶ 49-54. Exhibit T is one of the documents that MetroPCS's affiliates provided to USAC's independent auditor as part of the USAC audits mentioned above. The CPUC fails to explain how it was prejudiced by the introduction of these documents. For example, at no point in this lawsuit has the CPUC ever sought to depose Mr. Barnes, despite his submitting several substantive declarations in this case. The CPUC therefore does not (and cannot) argue that it would have asked Mr. Barnes about these documents (or any others) in a deposition. Nor does the CPUC identify any other action it would have taken if the documents had been produced earlier.[10] Finally, there is no

---

[9] At any rate, if the CPUC seeks to renew its objection to the reports' admissibility, it should have done so under Rule 56(c)(2), not Rule 37(c). *See supra* Section I.

[10] Moreover, the CPUC cannot attempt to make up for this deficiency by theorizing some prejudice for the first time on reply. *See Willis v. Koning & Assocs.*, 2023 WL 2541327, at *2 (N.D. Cal. Mar. 15, 2023) (striking "new evidence that was improperly submitted for the first time on reply").

12

reason to believe the CPUC was prevented from taking some other action to advance its position, as Exhibits I, J, K, and T merely provide additional (though not essential) corroboration of Mr. Barnes' sworn statements and the otherwise extensive record of contemporaneous business records before the Court. *See* Dkt. 201-1.

### 2. Chill Declaration Exhibits

The CPUC also seeks exclusion of "the documents attached to the Chill Declaration." Dkt. 204 at 1-2. This is a non sequitur. MetroPCS did not attach documents to the Chill Declaration, nor is MetroPCS relying on such documents for purposes of summary judgment. *See* Dkt. 201-5. Rather, MetroPCS produced these documents to the CPUC because the CPUC's expert requested them.[11] Dkt. 201-2, Ex. 4 (Nuehring Report) ¶¶ 45, 48. Because the exhibits are not part of the Court's record, there is nothing to exclude.

### 3. Financial and Customer Data

Similarly, the CPUC seeks exclusion of "financial and customer data [from] the record" because "MetroPCS did not disclose much of this evidence to the CPUC until January 2022 at the earliest." Dkt. 204 at 4. There is undeniable irony in the CPUC taking the position that MetroPCS must adduce "competent evidence of actual revenue figures," Dkt. 185 at 7, and, when that evidence is produced, turning around and asking the Court to ignore it as though it never existed. As explained above, the CPUC has invented an evidentiary burden that does not exist. There is no basis for excluding evidence that MetroPCS introduced to meet the CPUC's posited burden simply because the CPUC has no persuasive answer to the evidence.

### C. Even If the CPUC's Baseless Claims Had Merit, Striking Evidence Is Unwarranted and the Court Should Order an Alternative Remedy.

As discussed, the CPUC has not established any violation of Rule 26(a) or (e), nor has it articulated any prejudice. But even if it had, at most, the appropriate remedy would be to allow the CPUC limited additional time to conduct further discovery. *See* Fed. R. Civ. P. 56(d)(2), (e)(1).

/////

---

[11] The CPUC incorrectly states that none of the Chill Declaration exhibits "have ever been disclosed to the CPUC." Dkt. 204 at 1-2. MetroPCS produced the documents to the CPUC.

13

PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE
*MetroPCS California, LLC v. Reynolds*, Case No. 3:17-cv-05959-JD

MetroPCS asks that the Court order this alternative remedy in the event that it finds a disclosure violation that is not harmless.

*   *   *

The CPUC has evidently concluded that it is unable to respond to MetroPCS's motion for summary judgment on the merits, so it resorts to a legally flawed and disingenuous procedural ploy. The Court should soundly reject this tactic.

## CONCLUSION

For the foregoing reasons, MetroPCS respectfully requests that this Court deny the CPUC's motion to strike in its entirety.

DATED this 18th day of April, 2023.

> Respectfully submitted,
>
> DLA PIPER LLP (US)
>
> By: /s/ *Peter Karanjia*
>      Peter Karanjia
>
> Attorneys for Plaintiff MetroPCS California, LLC